# KREIGER *v.* SHELBY RAILROAD COMPANY and Others.

## SAME and Others *v.* SAME and Others.

## SAME and Another *v.* SAME and Others.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

Nos. 948, 949, 950. Submitted December 12, 1887. — Decided March 19, 1888.

Upon a writ of error to the highest court of a State, under Rev. Stat. § 709, the opinion of that court, recorded as required by the statutes of the State, may be examined by this court to ascertain the ground of the judgment.

Statutes of a State authorized a district in a county, defined by exact boundaries, to determine by the vote of its inhabitants to subscribe for stock

in a railroad company, and required bonds to be executed in its name by the county judge to the railroad company for the amount of stock so subscribed for. By later statutes, it was enacted that this district should be entitled to vote on the amount of its stock, and in so doing be represented by certain magistrates of the county; and that it should have a certain corporate name, and by that name might sue and be sued. The highest court of the State held that by the earlier statutes the district was made a corporation, and entitled to vote and to receive dividends on its stock in the railroad company, and that the later statutes made no change in the contract created by the earlier statutes. *Held*, that this court had no jurisdiction on writ of error.

THESE were three suits in equity, one brought by the Shelby Railroad Company, another by the Shelby Railroad District of Shelby County in the State of Kentucky, and the third by Kreiger and other individual stockholders in the railroad company. The plaintiffs in each suit were made defendants in each of the other suits. All the cases were argued together in the courts of the State of Kentucky and in this court, and presented the question whether the Shelby Railroad District had the right of voting at stockholders' meetings upon stock held by it in the Shelby Railroad Company, under the following circumstances:

By an act of the legislature of Kentucky of March 15, 1851, the Shelby Railroad Company was incorporated; its capital stock was fixed at $600,000, in shares of $50 each, to be subscribed for by any individual or corporation; at any meeting of the stockholders, each stockholder was to be "allowed one vote for every share owned by him, her, or it;" on every share subscribed, one dollar was to be paid at the time of the subscription, and the residue in instalments and at times to be fixed by the president and directors; all payments made on the stock were to bear interest until a dividend made, certificates of stock were to be issued to the persons entitled, in addition to the shares subscribed or held by them, and no certificates of stock were to be issued until they were paid for; the county court of Shelby County was empowered to subscribe for stock for all such interest in behalf of the county, its subscription was to be made payable at such times and places and upon such terms as might be agreed on between it and the

commissioners or directors taking its subscription, and, for the purpose of paying that subscription, it was authorized to levy and collect a tax on all the property subject to taxation within the county; and every person paying any part of the tax was to be entitled to his *pro rata* share of stock, and to receive a certificate thereof on paying, or producing transfers from those who had paid, for a full, half or quarter share.

An act of February 3, 1869, amending the original charter, authorized a certain portion of Shelby County, included in a boundary defined in this act, to subscribe for any amount of the stock not exceeding $300,000, and also authorized other counties to subscribe for certain amounts of stock, and further enacted as follows:

" Sec. 3. Upon the written application of the president and directors of said company and of ten taxpayers of any of said counties, the county judge of such county shall, within thirty days thereafter, cause a vote of the legal voters residing in the county, or portion of county, to be taxed, to be taken at the several places of voting therein, to ascertain whether the voters of said counties, or portion of Shelby County, are in favor of said subscription."

" Sec. 5. If a majority of the votes cast shall be in favor of said subscription, it shall be the duty of the county judge forthwith to cause the subscription to be made in the name of said county, or portion of Shelby County, as the case may be.

" Sec. 6. Where any such subscription to the capital stock of said company shall have been ordered, and the conditions aforesaid complied with, bonds shall be executed in the name of and under the seal of or scroll of said portion of Shelby County, or said counties, as the case may be, in such form and in such amounts, the entire amount of said bonds not to exceed the sum subscribed, and payable at such places, and bearing interest payable semi-annually, at such rates, not exceeding eight per centum per annum; as the president and directors may elect. The bonds shall be due and payable twenty years from their date, with the privilege reserved to the said counties to pay them after three years from date. The bonds shall be signed by the judge of the county court

and countersigned by the county clerk. When so executed, said bonds shall be delivered to the president and directors of said company, in payment of said subscription, and they may be by them negotiated, hypothecated or sold, upon such terms and at such times as may by said president and directors be deemed expedient, and may be transferred by endorsement.

"Sec. 7. When any such subscription shall have been made, it shall be the duty of the county judge and the justices of the peace of the precincts or the counties in which the vote is taken, to levy annually a direct tax upon all the property in such county, or portion of county, subject to taxation for state revenue, to pay the interest when due, and the principal at maturity; and they may levy a tax to pay any portion of said bonds at any time after three years: Provided, that no greater tax than one per cent shall be levied in any one year, except to pay the bonds at maturity." "The collecting officer shall execute to each person a receipt for the amount of taxes paid by him, which shall be assignable, and, when they amount to fifty dollars or more, shall entitle the holder, upon presentation to the proper officers of the company, to certificates of stock at the rate of one share for fifty dollars, and every multiple of fifty."

"Sec. 9. The several counties and portion of counties shall not vote the stock for which certificates may be issued to the taxpayers, but the same shall be voted by the individual stockholders."

An act of March 11, 1870, further amending the charter of the railroad company, contained the following section:

"Sec. 3. When any county, or part of a county, city, town or precinct, shall have delivered its bonds in payment for stock subscribed, it shall be entitled to representation, and to vote the amount of such stock in any meeting of the stockholders of said company. The stock owned by a county shall be represented by the county judge and all of the justices of the peace of the county; stock owned by a part of a county, or a precinct, by the county judge and by the justices of the peace residing in the district or precinct taxed; stock owned by a city or town, by its general council or board of trustees; and

these several bodies may designate a suitable person or persons as their proxies to represent them in any meeting of the stockholders of said company. It shall be the duty of the county judge to call together at the county seat the justices entitled to vote, and to cause their. action to be spread upon the records of the county court."

Another act, passed February 26, 1873, enacted that "the part of Shelby County embraced in the boundary given" in the act of 1869 should "have the corporate name of. The Shelby Railroad District of Shelby County," and by that name might sue and be sued.

In accordance with the provisions of the act of 1869, that portion of Shelby County therein defined forthwith subscribed $300,000 to the stock of the railroad company, and its bonds for that amount were issued and delivered to the railroad company on June 1, 1869, and were sold by the company and the proceeds applied to the construction of its road; and a tax was annually levied and collected, amounting in all to more than $300,000, which was applied to the payment of interest becoming due on the bonds, and of part of the principal, leaving such bonds, or others given in renewal thereof, now remaining unpaid to the amount of $248,000; and the district holds certificates of stock to that amount, and always voted upon its. stock until these suits were brought. Certificates of stock to a large amount have also been issued to taxpayers and are held by Kreiger and others. The first dividend on the stock was declared in December, 1881, and was paid to all the stockholders, including the district.

The Court of Appeals of Kentucky, affirming the judgments of a lower court of the State, adjudged that the Shelby Railroad District of Shelby County was a stockholder in the Shelby Railroad Company to the extent of the principal of the bonds of the district, issued and delivered to the railroad company, and still outstanding and unpaid, and was entitled to vote and receive dividends accordingly.

Kreiger and others sued out these writs of error, which the railroad company and the district now moved to dismiss for want of jurisdiction.

*Mr. J. C. Beckham* and *Mr. P. J. Foree* for the motions.

*Mr. B. F. Buckner* and *Mr. John L. Dodd* opposing.

Mr. Justice Gray, after stating the case as above reported, delivered the opinion of the court.

It is contended for the plaintiffs in error, that the statutes of 1851 and 1869 created a contract by which the stockholders of the Shelby Railroad Company were those persons who had become so by subscribing for stock or by the payment of taxes, and the right to vote upon stock subscribed for by counties or other municipal subdivisions was in taxpayers only; and that the statutes of 1870 and 1873 first granted to the Shelby Railroad District of Shelby County the right to vote as a stockholder in the railroad company, and thereby impaired the obligation of the contract created by the earlier statutes.

But the insuperable difficulty in the way of sustaining these writs of error is, that it does not appear that the Court of Appeals of Kentucky gave effect to the statutes of 1870 and 1873 as making any change in that contract.

The statutes of Kentucky require written opinions to be delivered by the Court of Appeals in all cases, and to be recorded by its clerk. Code of Civil Procedure, § 765; Gen. Stat. c. 28, art. 2, § 10; c. 16, art. 1, § 1. By the settled course of decision under the existing judiciary acts of the United States, this court may examine opinions so delivered and recorded, to ascertain the ground of the judgment of the State court. *Murdock* v. *Memphis*, 20 Wall. 590, 633; *McManus* v. *O'Sullivan*, 91 U. S. 578; *Gross* v. *United States Mortgage Co.*, 108 U. S. 481, 487: *Adams County* v. *Burlington & Missouri Railroad*, 112 U. S. 123, 129; *Detroit Railway* v. *Guthard*, 114 U. S. 133, 137; *Jacks* v. *Helena*, 115 U. S. 288; *Philadelphia Fire Association* v. *New York*, 119 U. S. 110. The decision in *Fisher* v. *Cockerall*, 5 Pet. 248, 255, cited by one of the defendants in error, in which, on a writ of error to the Court of Appeals of Kentucky, this court held that the

opinion of that court could not be taken into consideration, was decided under the judiciary act of 1789, which contained a provision, omitted in the later acts, expressly requiring the error assigned as a ground of reversal to appear on the face of the record. Acts of September 25, 1789, c. 20, § 25, 1 Stat. 86; February 5, 1867, c. 28, § 2, 14 Stat. 386; Rev. Stat. § 709.

In the cases now before us, the opinions delivered in writing by the Court of Appeals of Kentucky, recorded by its clerk, and sent up with the transcript, consist of an elaborate opinion upon the original hearing, and a shorter one upon a petition for a rehearing.

The original opinion makes no mention of the acts of 1870 and 1873, but, proceeding wholly upon the construction of the charter of 1851, as amended by the act of 1869, holds, for reasons stated at length, that by the legal effect of the act of 1869, defining by boundaries a district in Shelby County, authorizing it to determine by popular vote of its inhabitants to subscribe for stock in the railroad company, and requiring bonds to be executed in its name by the county judge to the railroad company for the amount so subscribed for, the district was made a corporation, and entitled to all the rights and privileges of other stockholders in the railroad company, and had the right to vote and to receive dividends upon the stock thus subscribed for, except so far as owners of property within the district, having paid taxes assessed upon them towards paying the principal sum so subscribed, had received certificates of stock for the sums so paid by them; and that the right of the district to vote and to receive dividends upon so much of its stock as had not been so paid for was not displaced or affected by the issue of certificates of stock to taxpayers for sums paid by them to meet the accruing interest on the sum subscribed by the district, because the stock so issued for interest was, by the express provisions of the charter constituting the contract between the stockholders, to be in increase of the original capital stock.

The opinion delivered on overruling the petition for a rehearing reaffirms the positions of the former opinion, and declares

that, while the provisions of the act of 1869, amending the original act of incorporation, were indefinite as to the manner in which stock held by the district should be voted on, the acts of 1870 and 1873 did no more than make that certain which was before uncertain, or had been omitted from the original act of incorporation, by giving the district a distinct name and authorizing it to be represented by the county judge and justices of the county, and providing a remedy by which the rights of the corporation might be asserted and its liabilities enforced; but that there had been no change of contract.

It thus appears that the State court, upon full consideration, decided that the acts of 1870 and 1873 conferred no new rights, but only defined more clearly the manner in which the rights conferred by the earlier statutes should be exercised; and that it based its judgments entirely upon the construction and effect of the earlier statutes, and upon grounds which would have been equally controlling if the later acts had not been passed. The necessary conclusion is that this court has no jurisdiction to review those judgments. *Bank of West Tennessee* v. *Citizens' Bank of Louisiana*, 13 Wall. 432; *S. C.* 14 Wall. 9; *Palmer* v. *Marston*, 14 Wall. 10; *Kennebec Railroad* v. *Portland Railroad*, 14 Wall. 23; *Stevenson* v. *Williams*, 19 Wall. 572; *New Orleans Waterworks* v. *Louisiana Sugar Refining Co.*, ante, 18.

*Writs of error dismissed for want of jurisdiction.*