# COLUMBIA WATER POWER COMPANY *v.* COLUMBIA ELECTRIC STREET RAILWAY LIGHT AND POWER COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 67. Argued December 6, 7, 1898. — Decided January 9, 1899.

Reading the complaint and the answer in this case together, the question whether the contract of the plaintiff was impaired by subsequent state action appears on the face of the pleadings, and this court has jurisdiction to hear and determine the case.

Under Rev. Stat. § 709 there are three classes of cases in which the final decree of a state court may be examined here: (1) where is drawn in question the validity of a treaty, or statute of, or authority exercised under, the United States, and the decision is against their validity; (2) where is drawn in question the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of their validity; (3) where any title, right, privilege or im-

munity is claimed under the Constitution, or any treaty or statute of, or commission held or authority exercised under, the United States, and the decision is against the title, right, privilege or immunity specially set up and claimed by either party under such Constitution, statute, commission or authority, and in this class the Federal right, title, privilege or immunity must, with possibly some rare exceptions, be specially set up or claimed to give this court jurisdiction.

But where the validity of a treaty or statute of the United States is raised, and the decision is against it, or the validity of a state statute is drawn in question, and the decision is in favor of its validity, if the Federal question appears in the record and was decided, or if such decision was necessarily involved in the case, and the case could not have been determined without deciding such question, the fact that it was not specially set up and claimed is not conclusive against a review of such question here.

The provision in the act of the South Carolina legislature of December 24, 1887, that the right of the State to the five hundred horse power of water retained for the use of the penitentiary should be "absolute" authorized the leases of such portion thereof as was not required for the individual use of the penitentiary.

Whether the plaintiff had a legal title to the lands in question in this case was purely a local issue, and whether the erection of a steam plant by the defendant was an incident of its contract with the state penitentiary is not reviewable here.

THIS was a complaint in the nature of a bill in equity, filed in the Court of common pleas for Richmond County, South Carolina, by the Columbia Water Power Company, as plaintiff, to enjoin the Columbia Electric Street Railway, Light and Power Company from using certain water power for the propulsion of its cars, lighting its lamps and furnishing power motors, also from entering upon plaintiff's lands and erecting thereon its buildings, works and machinery ; and also requiring the defendant to remove such as had already been erected, and for the payment of damages.

The bill set forth that a structure, known as the Columbia Canal, begins above the city, passes through the city near the western boundary, and empties into the Congaree River just beyond the limits of the city, passing around the shoals and falls in said river, and when constructed and in use made a continuous communication between the Broad and Congaree rivers ; that the canal was begun by the State as a public work in the year 1824, and for the purpose of its construction

certain lands were purchased within the limits of the city, through which the canal was to be carried and constructed; that the canal was used for purposes of navigation for some time and remained, with the lands described, the property of the State until February 8, 1882, when the general assembly of the State by an act of that date authorized and directed the canal commission to transfer the canal, with the aforesaid lands, to the board of directors of the state penitentiary, with all the rights and appurtenances thereto acquired by the State; that the board was authorized and directed to, and subsequently did take possession of the canal and lands, and proceeded with the work of enlarging and developing the canal, expending large sums of money for that purpose, and widened and enlarged its banks, and remained in the full possession thereof until December 24, 1887, when the general assembly passed an act, (the material portions of which are printed in the margin,[1]) " to incorporate the board of trustees of the Columbia

---

[1] Act of December 24, 1887.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same,* That the board of directors of the South Carolina penitentiary are hereby authorized, empowered and required to transfer, assign and release to the board of trustees of the Columbia Canal, hereinafter created and provided for, the property known as the Columbia Canal, together with the lands now held therewith, acquired under the acts of the general assembly of this State with reference thereto or otherwise, all and singular the rights, members and appurtenances thereto belonging; and upon such transfer, assignment and release all the right, title and interest of the State of South Carolina in and to the said Columbia Canal and the lands now held therewith, from its source at Bull's Sluice through its whole length to the point where it empties into the Congaree River, together with all the appurtenances thereunto belonging, shall vest in the said board of trustees for the use and benefit of the city of Columbia, for the purposes hereinafter in this act mentioned, subject, nevertheless, to the performance of the conditions and limitations herein prescribed on the part of the said board of trustees and their assigns: *Provided,* That should the said canal not be completed to Gervais street within seven years from the passage of this act all the rights, powers and privileges guaranteed by this act shall cease, and the said property shall revert to the State.

SEC. 2. That the said board of trustees are hereby authorized and directed, for the development of the said canal, to take into their possession the said property with all its appurtenances; and for the purpose of navigation, for

Canal, to transfer to the said board the Columbia Canal with the lands held therewith, with its appurtenances, and to develop the same," 19 So. Car. Stats. 1090; that by section one of the act the board of directors of the penitentiary was authorized to transfer and release to the board of trustees of the

---

providing an adequate water power for the use of the penitentiary and for other purposes hereinafter named, they are hereby authorized, empowered and directed to improve and develop the same.

　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 7. That the board of trustees shall, within two years from the ratification of this act, complete the said canal so as to carry a body of water 150 feet wide at the top, 110 feet wide at the bottom and ten feet deep from the source of the canal down to Gervais street, *and furnish the State, free of charge, on the line of the canal, 500 horse power of water power,* to Sullivan Fenner or assigns 500 horse power of water power, under his contract with the canal commission, and to furnish the city of Columbia 500 horse power of water power at any point between the source of the canal and Gervais street the city may select; and shall, as soon as is practicable, complete the canal down to the Congaree River a few yards above the mouth of Rocky Branch: *Provided, That the right of the State to the free use of the said* 500 *horse power shall be absolute,* and any mortgage, assignment or other transfer of the said canal by the said board of trustees or their assigns shall always be subject to this right.

　\*　　　\*　　　\*　　　\*　　　\*　.　　\*　　　\*

SEC. 21. The said board of trustees shall be, and is hereby, declared a body politic and corporate. Its corporate name shall be "Board of Trustees of the Columbia Canal." Its officers shall be a chairman, and a secretary and treasurer. It shall have a corporate seal; may make and enforce its by-laws for its government; may purchase, sell or lease lands adjoining the canal useful for the purposes of the canal; *may sell or lease the water power of the canal subject to such rules and regulations as it shall prescribe, having first provided for the State with* 500 *horse power of water power at the penitentiary,* and 500 horse power of water power for Sullivan Fenner or his assigns, and 500 horse power of water power for the city of Columbia; may sue and be sued, plead or be impleaded under their corporate name, and exercise such other powers as are hereinbefore granted, and shall fix such compensation for the services of the secretary and treasurer *as they may deem proper.*

Section 23 as amended by act of December 24, 1890. (20 S. C. Stats. 967.)

SEC. 23. That the said board of trustees, as soon as they have fully developed the said canal and secured the payment of the debts contracted by them in its development, they shall turn over the canal, with all its appurtenances, to the city of Columbia. But the said board of trustees shall have full power and authority, before the said canal has been fully developed and completed and turned over to the city of Columbia, to sell, alien-

canal the canal property and its lands, with their appurtenances, and that the same should vest in the trustees for the use and benefit of the city of Columbia; that such transfer was made and possession taken by the board of trustees, and the property so remained in their possession until the date and year hereinafter mentioned.

That by section twenty-one of the above act the board of trustees was declared a corporate body, and was authorized among other things to purchase, sell or lease lands adjoining the canal, useful for the purposes of the canal, to sell or lease the water power of the canal subject to such rules and regulations as it should prescribe; and that by virtue of such act the trustees became entitled to the exclusive franchise and right to sell or lease the water power developed by the canal for manufacturing and other industrial purposes, without let or hindrance, and without the right of any person or corporation to interfere or interrupt in any manner the use of such water power, save and except it should provide a certain amount of water power to certain persons and parties in said act nominated and mentioned, and that no person or corporation had a right to divert, disturb, impede or interfere with the flow of water down the said canal.

That by the twenty-third section of this act, as amended by the subsequent act of December 24, 1890, 20 So. Car. Stats. 967, the board of trustees was given full power and authority to sell, alienate and dispose of the canal, its lands and appurtenances, to any person or corporation, subject to all duties and liabilities imposed by the act, and to all contracts made by the board, prior to such transfer, upon the approval and con-

---

ate and transfer the same and all its appurtenances, the lands held therewith, and all the rights and franchises conferred by this act on said board of trustees, to any person or corporation, subject, however, to all the duties and liabilities imposed thereby, and subject to all contracts, liabilities and obligations made and entered into by said board prior to such sale and transfer, upon the approval and consent of nine members of the city council of the city of Columbia; and before such sale, alienation and transfer is made thirty days' notice of the offer to purchase and the terms thereof shall be given to the council of the city of Columbia.

Approved December 24, A.D. 1890.

sent of nine members of the council of the city of Columbia; that in pursuance of such section, the trustees, before the completion of the canal, and on January 11, 1891, conveyed all of said property to the Columbia Water Power Company, the plaintiff, including the canal and all of the lands held therewith, easements, rights of way, rights of overflow and appurtenances acquired by the board of trustees, with their rights and franchises; that the plaintiff went into possession of all the property, and so remained in possession without any claim or assertion of an adverse right; and thereby became entitled to all the franchises, privileges and immunities conferred upon the board of trustees.

That the act of December 24, 1887, provided that upon the development and completion of the canal the board of trustees should furnish the State free of charge five hundred horse power of water power; and the twenty-third section of the act as amended provided that this duty should be imposed upon any person or corporation to whom the board of trustees should sell or transfer the property; that in March, 1892, the development and enlargement of the canal was completed, and on said date, and ever since, the plaintiff was and is ready to furnish the State with the five hundred horse power of water power as required by the act aforesaid.

That the defendant, a South Carolina corporation, was organized by the consolidation of three prior companies, and was authorized to construct through the city a street railway, and also to maintain a system of electric lighting; that in May, 1892, the plaintiff was informed by the board of directors of the penitentiary that the defendant company had been authorized by the said board to build a power house, with forbay, flumes and water wheels, for the purpose of utilizing the five hundred horse power to be furnished to the State, and that it was the purpose of such company to erect works under such authority to develop such power, and to furnish to the State, within the walls of the penitentiary, so much of said power as had been agreed upon by and between the board of directors of the penitentiary and the said company; that the plaintiff gave immediate notice to the said board and to the

defendant that it would object to the use of any of its lands or embankments on the west side of the canal by any person or corporation, except so much as would be necessary for the erection of the power house to furnish five hundred horse power for the use of the State; that the State should have full liberty to build such works upon the embankments of the canal as were necessary in furnishing such water power, but that such works should be strictly confined to such portion of the property of the plaintiff as should be necessary for that purpose, and that the plaintiff would not recognize the right of the State to assign such horse power, or any part thereof, to any corporation to be used for private purposes, outside of the walls of the penitentiary or any public institution of the State; and that it was under no obligation to furnish water power from the canal to be used by private corporations for private enterprises.

That subsequently the defendant, acting through the board of directors of the penitentiary, submitted plans and specifications for the erection of works for making the state water power available, and plaintiff approved of the same as not taking more of the land than was necessary for the development of the five hundred horse power for the use of the State, and allowed the defendant to proceed with its work, which was completed in accordance with the plans and specifications so submitted; but that thereafter the defendant, against the protests and objections of the plaintiff, proceeded to place in such works machinery intended solely for the purpose of running its electric lights and street railway, and furnishing power to divers persons in the city for their industries, against which plaintiff protested, and gave notice that proceedings would be taken to prevent such misapplication by the electric company, which, notwithstanding such protests, continues to place such machinery in its power house for its own private purposes; and that the plaintiff is wholly without power to prevent the action of the defendant in such misapplication of such power for its private purposes, owing to the duty of the plaintiff to furnish power for the use of the State and its penitentiary, as such power is furnished and made available at and by the same

water wheel; and that, unless such use be enjoined, it will suffer irreparable injury and damage, and its franchise to sell and lease water power for purposes of manufacturing and other industrial purposes will be affected and materially injured.

That the said defendant also in February, 1893, against the protest of the plaintiff, entered upon its premises on the western embankment of the canal and at the southern end of the power house above mentioned, and excavated and removed the earth, rock and works composing the foundation of such embankment to the great danger of the canal and embankment, and began erecting the foundations for the steam engine to be used in running generators, dynamos, etc., as above stated, and has placed portions of its machinery in such structure to be used in producing electric power, and in May, 1893, commenced to erect a boiler house and coal house for use in the same business.

The complaint further alleged that the plaintiff had performed all its obligations to the State and stood ready to continue the performance of the same, but the defendant in disregard of its rights has trespassed upon its property, excavated its embankment, and has interfered with the enjoyment of the franchises granted to it by the State; that a judgment at law against the company would be worthless, and hence the plaintiff prayed for an injunction against such use of the water power and against further trespasses upon its lands.

The answer put in issue the title of the plaintiff to the lands occupied by the defendant; denied that the board of trustees of the canal ever became entitled to the exclusive franchise and right to sell or lease water power developed by it for purposes of industrial enterprises; denied that the five hundred horse power reserved to the State was provided solely for the individual use of the State in its public institutions; denied any intent on its part to injure the plaintiff in its franchise and property by the erection of its works, and alleged that the State, being seized in fee simple of the land and entitled to the unrestricted use of the five hundred horse power referred to in the complaint, but being without means to

develop the same, entered into a contract dated May 26, 1892, with the defendant, whereby it was stipulated that the defendant should erect suitable works and machinery for the development of such horse power, furnish to the penitentiary so much as was necessary for its purposes, and as a consideration for this should be allowed to make use of the surplus power for its own purposes; that such contract was thereafter ratified and confirmed by an act of the general assembly, approved December 24, 1892, 21 So. Car. Stats. 94; and that the defendant was entitled under such contract to the unrestricted use of such horse power for the purposes contemplated by the contract.

The attorney general, appearing on behalf of the State, filed a suggestion to the effect that if the injunction were granted, defendant would be prevented from carrying out its agreement with the State, and the State would be deprived of the water power it was entitled to in the manner contracted for, and of the revenue it had secured under the contract. He did not, however, submit the rights of the State to the jurisdiction of the court, but insisted that the court had no jurisdiction of the subject, and asked that the complaint be dismissed.

The case came on for hearing upon the complaint, answer, the suggestion of the attorney general and the articles of agreement, and resulted in a decree dismissing the complaint. An appeal was taken to the Supreme Court of the State, which affirmed the decree of the court below, (43 So. Car. 154,) whereupon plaintiff sued out a writ of error from this court, assigning as error the decision of the Supreme Court affirming the validity of defendant's contract with the board of directors of the penitentiary, and the act of the general assembly ratifying the same.

*Mr. LeRoy F. Youmans* for plaintiff in error.

*Mr. William H. Lyles* for defendant in error.   *Mr. John T. Sloan* was on his brief.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

1. A preliminary motion was made to dismiss this writ of error upon the ground that no Federal question was involved, and even if there were such question, it was not "specially set up and claimed" in the state court, as required by Rev. Stat. § 709.

An examination of the complaint shows that the plaintiff relies upon the act of the general assembly of December 24, 1887. This statute (sec. 1) authorizes the board of directors of the South Carolina penitentiary, which had acquired the ownership of the canal under a previous act of February 8, 1882, to transfer the property to the board of trustees of the Columbia Canal, and (sec. 7) required the completion of the canal and *a reservation to the State, free of charge, on the line of the canal, of five hundred horse power of water power*, with a further proviso that the right of the State to the free use of the said five hundred horse power should be *absolute*, and any mortgage, assignment or other transfer of the said canal by the said board of trustees, or their assignees, should always be subject to this right. In section twenty-one this reservation is described as a provision for the State, with five hundred horse power of water power *at* the penitentiary. By section twenty-three, as amended in 1890, the board of trustees was given authority to *sell, alienate and transfer the canal*, with its appurtenances, lands and franchises, to any person or corporation, subject, however, to all contracts, liabilities and obligations made and entered into by said board prior to such sale and transfer. Pursuant to this authority, the board of trustees, on January 11, 1892, conveyed the canal and its appurtenances to the plaintiff.

The gist of the complaint is that, in 1892, the defendant, acting as the agent of the State through the board of directors of the penitentiary, submitted plans and specifications for the erection of works for making the said five hundred horse power of water power available, to which the plaintiff made no objection; but that thereafter, against its protests, proceeded to

construct in such works machinery intended for the purpose of running its electric lights and street railway and furnishing power to the citizens of Columbia for divers industries; and entered upon the premises of the plaintiff and laid foundations for a steam engine to be used in running its generators, etc., and began the erection of an engine house, boiler house and coal house for the purpose of establishing a steam plant.

The complaint did not set up the contract of the board of directors of the penitentiary with the defendant and the act of the general assembly of December, 1892, confirming the same, but these were both set forth in the answer and relied upon by the defendant as its authority for the erection of its works. In this contract the defendant agreed to erect, on the western bank of the canal opposite the penitentiary, suitable water wheels of sufficient capacity to utilize and develop the five hundred horse power of water power, and to transmit across the canal to some convenient point within the walls of the penitentiary not to exceed one hundred horse power for the use and benefit of the penitentiary. In consideration of this the board of directors agreed to allow the defendant the use of all their rights, title and interest to the land on the west side of the canal, and also to allow it the free and uninterrupted use of the said five hundred horse power of water power reserved to the penitentiary, with the exception of the one hundred horse power so reserved for its private use. This contract was subsequently ratified and confirmed by an act of the general assembly approved December 24, 1892.

While no special mention is made in the complaint of the Constitution of the United States, the whole theory of the plaintiff's case taken in connection with the answer is that the rights which it acquired to the five hundred horse power in question under the act of 1887 were impaired by the subsequent act of December 24, 1892, ratifying and approving the contract of the board of directors of the state penitentiary with the defendant. The contract of the defendant is set up in the complaint, and although the act of December, 1892, ratifying the same is not set up there, it appears in the answer and is relied upon as validating the contract; so that, reading

the complaint and answer together, the question whether the contract of the plaintiff was impaired by subsequent State action appears on the face of the pleadings.

In passing upon the case, the Supreme Court, speaking through Mr. Justice Gary, held that one of the objects of the plaintiff's action was to have the contract between the State and the defendant as to the five hundred horse power declared null and void on the ground that the State could not lease the same. In view of an intervening suggestion, filed by the attorney general, to the purport that the State had interests which would be affected by granting the relief prayed for, he held that the State, being an indispensable party and refusing to become a party, the cause of action on the equity side of the court could not be sustained; and in considering the cause of action on the law side of the court he reached the conclusion that the State was not an indispensable party. He then proceeded to consider whether the contract between the State and the defendant relative to the five hundred horse power was null and void, and held that the proviso to section seven of the act of 1887 being that the right of the State to the free use of this horse power should be *absolute*, the construction given to it by the legislature in the act of 1892 was correct, and that the word "absolute" was used for the purpose of creating a right in the State to this horse power separable and distinct from the ownership in other lands and not dependent upon any particular lands to which it might be appurtenant. It followed that the contract between the State and the defendant was not null and void.

He further held that the right of the defendant to erect the steam plant depended upon the fact whether it was merely incidental and essential to the enjoyment of the water power plant; that the parties had a right to trial by jury as to these issues, but as no demand was made therefor the court assumed that the Circuit Court properly decided all questions of fact upon which its judgment rested. The other justices concurred in the result, the Chief Justice saying that he was not satisfied that the plaintiff ever acquired title to the land upon which the works in question had been erected. There is nothing to

indicate that either of them dissented from the views expressed by Mr. Justice Gary, who presumably spoke for the court, with respect to the Federal question.

In holding that the contract with the defendant and the legislative act confirming the same were valid, the court proceeded upon the idea that the act of 1887 authorizing the transfer of the property to the board of trustees of the Columbia Canal made the reservation to the State of the five hundred horse power an absolute one; that the directors of the penitentiary could do with it as they pleased, and hence they had the right to turn it over to the defendant if, in their judgment, such course was warranted by a due regard for the interests of the State. While, in so holding, the court disposed of the case upon the construction of the contract under which the plaintiff asserted its right, such construction is no less a Federal question than would be the case if the construction of the contract were undisputed, and the point decided upon the ground that the subsequent act confirming the contract with the defendant did not impair it. The question in either case is whether the contract has been impaired, and that question may be answered either by holding that there is no contract at all, or that the plaintiff had no exclusive rights under its contract, or granting that it had such exclusive rights, that the subsequent legislation did not impair it. These are rather differences in the form of expression than in the character of the question involved, and this court has so frequently decided, notably in the very recent case of *McCullough* v. *Virginia*, 172 U. S. 102, that it is the duty of this court to determine for itself the proper construction of the contract upon which the plaintiff relies, that it must be considered no longer as an open question. *N. O. Water Works* v. *La. Sugar Co.*, 125 U. S. 18; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116.

To the argument that the Federal right was not "specially set up and claimed" in the language of Revised Statutes, section 709, it is replied that this is not one of the cases in which it is necessary to do so. Under this section there are three classes of cases in which the final decree of a state court may be reëxamined here:

(1) "Where is drawn in question the validity of a treaty, or statute of, or authority exercised under, the United States, and the decision is against their validity;"

(2) "Where is drawn in question the validity of a statute of, or an authority exercised under, any State on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of their validity;"

(3) "Or where any title, right, privilege or immunity is claimed under the Constitution, or any treaty or statute of, or commission held or authority exercised under, the United States, and the decision is against the title, right, privilege or immunity specially set up and claimed by either party under such Constitution, statute, commission or authority."

There is no doubt that under the third class the Federal right, title, privilege or immunity must be, with possibly some rare exceptions, specially set up or claimed to give this court jurisdiction. *Spies* v. *Illinois*, 123 U. S. 131, 181; *French* v. *Hopkins*, 124 U. S. 524; *Chappell* v. *Bradshaw*, 128 U. S. 132; *Baldwin* v. *Kansas*, 129 U. S. 52; *Leeper* v. *Texas*, 139 U. S. 462; *Oxley Stave Co.* v. *Butler County*, 166 U. S. 648.

But where the validity of a treaty or statute of the United States is raised, and the decision is against it, or the validity of a state statute is drawn in question, and the decision is in favor of its validity, this court has repeatedly held that, if the Federal question appears in the record and was decided, or such decision was necessarily involved in the case, and the case could not have been determined without deciding such question, the fact that it was not specially set up and claimed is not conclusive against a review of such question here. *Miller* v. *Nicholls*, 4 Wheat. 311; *Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Satterlee* v. *Matthewson*, 2 Pet. 380, 410; *Fisher's Lessee* v. *Cockerell*, 5 Pet. 248; *Crowell* v. *Randell*, 10 Pet. 368; *Harris* v. *Dennie*, 3 Pet. 292; *Farney* v. *Towle*, 1 Black, 350; *Hoyt* v. *Shelden*, 1 Black, 518; *Railroad Co.* v. *Rock*, 4 Wall. 177; *Furman* v. *Nichol*, 8 Wall. 44; *Kaukauna Co.* v. *Green Bay &c. Canal*, 142 U. S. 254.

The case under consideration falls within the second class,

and, as it appears from the record and from the opinion of the court, which may be examined for that purpose, (*Kreiger* v. *Shelby Railroad*, 125 U. S. 39,) that the question was presented and decided, that the act of 1892, affirming the validity of defendant's contract with the board of directors of the state penitentiary did not impair the obligation of plaintiff's contract, evidenced by the act of 1887, because that act properly construed conveyed no exclusive rights, we think the Federal question sufficiently appears.

2. Upon the merits the case presents but little difficulty. The argument of the plaintiff is that under the act of 1887 the board of trustees of the Columbia Canal, of which plaintiff is the successor, took an absolute title to the canal and appurtenant lands, with the right to " purchase, sell or lease lands adjoining the canal useful for purposes of the canal," and to " sell or lease the water power of the canal, subject to such rules and regulations as it shall prescribe, having first provided the State with five hundred horse power of water power at the penitentiary," for the individual use of the penitentiary alone, and with no right to lease or sublet it to others for private gain. In support of this contention, plaintiff relies not only upon the act of 1887, under which it takes title, but upon certain prior acts of the general assembly.

Thus, under section two of the act of September 21, 1866, " to provide for the establishment of a penitentiary," 13 So. Car. Stats. No. 4797, p. 393, it was made the duty of the commission " to select and procure a proper site, at some point if practicable where water power may be made available for manufacturing purposes within the enclosure, on which to erect suitable penitentiary buildings." And by a subsequent act, approved December 19, 1866, 13 So. Car. Stats. 408, the commissioners, who had been authorized by a previous act of December 18, 1865, to sell and convey the Columbia Canal, were authorized to sell it at public or private sale, at their discretion, provided that at any sale that may be made by said commissioners, there be made a reservation to the State of water power *sufficient for the purposes of the state penitentiary* for all time free of charge. In a subsequent act of

September 21, 1868, 14 So. Car. Stats. 83, the commissioners were vested by section four with like authority to sell at public or private sale, with a similar reservation to the State of water power sufficient for the purposes of the state penitentiary for all time free of charge. In another act, approved March 12, 1878, 16 So. Car. Stats. 444, to provide for the disposal of the Columbia Canal, there was also a proviso in section four that, "in all grants that may be made, sufficient power shall be reserved to the State *for the use of the penitentiary and the* city of Columbia." So, too, in an act of February 8, 1882, 17 So. Car. Stats. 855, to authorize the canal company to transfer the canal and lands to the board of directors of the penitentiary, it was provided that the board of directors should take possession on behalf of the State of the canal with its appurtenances, and, *for the purpose of providing an adequate water power for the use of the penitentiary,* were authorized to improve and develop the same. By section six of the same act they were authorized "to furnish to the city of Columbia, for the purpose of operating its water works and other purposes, five hundred horse power of water power; . . . and after reserving *for the use of the penitentiary* a power sufficient to meet *the demands of its ordinary operations and other industries conducted and carried on within its walls,* they are further authorized, with the comptroller general on behalf of the State, to lease to other persons or corporations water power upon such terms and upon such annual rental per horse power as in their judgment may be proper, and also to lease such mill sites along the line of the said canal as may be owned by the State, upon such terms as may be deemed most advantageous to the interest of the State."

It will be observed that these acts are progressively liberal to the State; that the earlier ones contemplated the use of the water power only for manufacturing purposes within the walls of the penitentiary, while the later ones indicated that such power was also reserved for the use of the city of Columbia, for the purpose of operating its water works and other purposes, as well as for leasing to others. But however cogent these acts might be to indicate that the object of the State

was to reserve to the individual use of the penitentiary the five hundred horse power, it is equally clear that the act of 1887 is decisive of a change of purpose in that regard; and in providing that the right of the State to the free use of its amount of water power should be *absolute*, it meant that the directors of the penitentiary should make such use of it as they pleased, regardless of prior acts, and the immediate requirements of the penitentiary. The clearer the reservation for the individual use of the penitentiary may have formerly been, the clearer the change of purpose becomes manifest by the use of the word "absolute." The theory of the plaintiff is that by the use of this word was meant simply the right of the State to the free use of the said five hundred horse power, unaffected by any mutations of ownership. This, however, was already secured to the State by the previous clause of section seven, requiring the board of trustees "to furnish to the State, free of charge, on the line of the canal, five hundred horse power of water power." Nor are the requirements of this word met by treating it as the equivalent of "perpetual" or "for all time." In construing statutes words are taken in their ordinary sense. No authority can be found for such a definition of the word "absolute;" nor does the context suggest it. Its most ordinary signification is "unrestricted" or "unconditional." Thus, an absolute estate in land is·an estate in fee simple. 2 Bl. Com. 104; *Johnson* v. *McIntosh*, 8 Wheat. 543, 588; *Fuller* v. *Misroon*, 35 So. Car. 314, 332; *Johnson* v. *Johnson*, 32 Alabama, 637; *Converse* v. *Kellogg*, 7 Barb. 590, 599. In the law of insurance, that is an absolute interest in property which is so completely vested in the individual that there could be no danger of his being deprived of it without his own consent. *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10; *Reynolds* v. *State Mutual Ins. Co.*, 2 Grant's Cases, 326; *Washington Fire Ins. Co.* v. *Kelly*, 32 Maryland, 421.

We have no doubt that in providing that the right of the State should be absolute, it was intended to permit the board of directors to do exactly what was done in this case, *i.e.* to lease such portion of the five hundred horse power as was not required for the individual use of the penitentiary. Indeed,

we perceive no other reason for the insertion of this clause. The right to use it in the penitentiary was already amply secured by clauses so frequently inserted in prior acts that no question of construction could be raised upon them, and when the act of 1887 went still further it was evidently upon the idea that the power not necessary for the penitentiary should not be wasted, but should be applied to such other uses as were conducive to the interests of the State. While the leasing of the same to the defendant may have been for private gain, the lighting of the city by electricity and the establishment of street railways was manifestly a public purpose.

If plaintiff's theory were sound the penitentiary would be unable to make use of its reserved water power unless it were also possessed of the requisite means to establish a plant, while under its actual arrangement with the defendant it grants to the latter its surplus water power, and in consideration thereof receives all such power as is necessary for its own purposes, and in addition thereto a substantial annual revenue for its other needs.

3. The remaining question as to injuries threatened and inflicted upon plaintiff's property by the entry of the defendant upon the western embankment of the canal, the digging, excavating and removal of the earth, and the erection of buildings and machinery thereon, does not demand an extended consideration. The court of common pleas found that plaintiff was owner of the property upon which these works were erected, but that the State, having the right to the five hundred horse power, had also the incidental right to lease the same to the defendant, which took thereby the right to put its electric plant upon the banks of the canal, as well as the supplementary right to put in a steam plant to be used at times when the water power was unavailable, by reason of freshets or by necessary repairs to the canal or other causes. The Supreme Court did not expressly pass upon the validity of plaintiff's title to the land, but held that whether the contract conferred upon the defendant the right to erect a steam plant depended upon the fact whether it was merely incidental to or essential to the enjoyment of the water

plant; and that no jury having been demanded, the court must assume that the Circuit Judge decided this question properly; and even if there were error on his part in the finding of fact, it was not the subject of review by the Supreme Court in a law case. It needs no argument to show that neither of these rulings involved a Federal question. Whether plaintiff had a legal title to the lands was purely a local issue, and whether the erection of a steam plant by the defendant was an incident of its contract with the state penitentiary is, for the reason stated by the Supreme Court, not reviewable here.

In addition to this, however, the deed through which the State and the plaintiff derived their title is not in evidence before us. The answer admitted that the State did acquire a strip of land lying within the boundaries described in the bill, but denied that the buildings erected by the defendant "at any point touched upon said strip of land." The State appeared to have derived title from one Rawls, whose deed was filed in the state court, but does not appear in the record before us, and the Supreme Court of the State found that it could not review the finding of the court below to the effect that the plaintiff was the owner in fee of the land.

The decree of the Supreme Court of South Carolina is therefore

*Affirmed.*