OSBORNE v. CLARK.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 159.    Argued January 16, 1907.—Decided February 25, 1907.

The fact that a state statute which was assailed in the state court as invalid under the constitution of the State might have been assailed on similar grounds as also invalid under the Constitution of the United States does not give this court jurisdiction to review under § 709, Rev. Stat., on writ of error where the objections to the decision under the Constitution of the United States were suggested for the first time on taking the writ of error.

THE facts are stated in the opinion.

*Mr. James J. Lynch* and *Mr. Floyd Estill,* with whom *Mr. Jesse M. Littleton, Mr. Isaac W. Crabtree* and *Mr. Felix D. Lynch* were on the brief, for plaintiffs in error:

The charter granted by the State of Tennessee to the Trustees of Carrick Academy created a contract, and the rights of

plaintiff in error under its charter were impaired by virtue of the act of 1881, authorizing the lease of this property to Winchester Normal College. ·

The Federal question as to the impairment of the obligation of the contract was sufficiently raised in the pleadings.

True, the Federal Constitution was not mentioned in the bill. But it is manifest that the Federal question was raised, when the bill attacked the act, because it undertook to authorize the trustees to appropriate the corporation's property to the use of another. It was raised by the demurrer, in which it was insisted that the General Assembly of Tennessee had a right to authorize a diversion of this fund. *Columbia Water Power Co.* v. *Columbia Electric &c. Co.,* 172 U. S. 474; *Mc-Cullough* v. *Virginia,* 172 U. S. 104; *Yazoo &c. Co.* v. *Adams,* 190 U. S. 1.

The opinions of the court may be looked to in determining whether or not a Federal question was raised and decided. *Murdock* v. *Mayor,* 20 Wall. 590; *San José Land & Water Co.* v. *San José Ranch Co.,* 189 U. S. 177.

In both courts the decisive question considered · and determined was whether the act of 1881 impaired the contract clause of the Federal Constitution.

Defendants in error contended that the acts of 1806 really conveyed the property to the State, and by virtue thereof · the State became the owner of the fund arising from the sale of this property, and that the academies endowed therewith were state agencies for this reason. Plaintiffs in error insisted that the State was only made a trustee, and that the fund was intended for Carrick Academy, and that the endowment of Carrick Academy with this fund did not make it a public corporation or state agency. The Supreme Court adopted the view of the defendants in error, and construed this act of Congress according to their insistence. This was necessary to the decision of the case, as it was decided. And hence a Federal question arises. *Glascow* v. *Baker,* 128 U. S. 560; *Neilson* v. *Lagow,* 7 How. 771; *Joplin* v. *Chachere,* 192 U. S.

94; *Shiveley* v. *Bowley,* 152 U. S. 1; *Kennedy Mining & Milling Co.* v. *Argonaut Mining Co.,* 189 U. S. 1.

*Mr. Charles C. Trabue,* with whom *Mr. William L. Granbery* was on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill to set aside a lease made by former trustees of Carrick Academy to the trustees of the Winchester Normal College, in pursuance of an Act of the General Assembly of Tennessee, authorizing the letting of the academy property to said lessees. The bill alleged that the act was contrary to the constitution of the State for various reasons, but said nothing of the Constitution of the United States, and in no way implied a reliance upon any of its terms. An Act of Congress of April 18, 1806, was referred to, but was not alleged to be contravened. The defendants demurred, and the demurrer, after being overruled by the Court of Chancery Appeals, was sustained by the Supreme Court of the State. —— Tennessee, ——. The case then was brought there by writ of error, and was argued both on the merits and upon a motion to dismiss.

The assignment of errors sets up that the above-mentioned state law impairs the obligation of contracts, contrary to the Constitution of the United States, although it does not show definitely what contract, or how that contained in the charter of Carrick Academy is impaired. It sets up, also, that the act is repugnant to the Act of Congress of April 18, 1806; and it alleges that the plaintiffs in error specially set up and claimed their rights in these respects in the Chancery Court of the State.

To show that the Constitution of the United States was relied upon below, the plaintiffs in error refer to passages in the opinions of the Court of Chancery Appeals and the Supreme Court, in which the *Dartmouth College case,* 4 Wheat. 518, was discussed, as establishing the point. But we are

unable to see that those passages prove the fact. The Court
of Chancery Appeals states the violations of the state con-
stitution set up in the bill, summarizes the questions presented
by the bill and demurrer, and then addresses itself to answer-
ing those questions, suggesting no others, and saying nothing
about the Constitution of the United States. After a state-
ment of historical facts, it says that if the act authorizing
the lease is constitutional and the subject-matter of the act
was under the control of the State, the case is at an end.
If Carrick Academy is a public corporation, the State is as-
sumed to have control. If it is a private corporation, the
state constitution is assumed to invalidate the statute by
one of the clauses set up in the bill. The judge, speaking
for himself, would regard the academy as a public corporation,
but he yields to the weight of the decision in the *Dartmouth
College case*, or at least to the principle of that case, accord-
ing to which, as he conceives, the academy is a private corpo-
ration, and therefore exempt from a diversion from its original
charter purposes, such as the act authorizing the lease is
assumed to effect. The objections to such a diversion that
he is considering are those that he has stated as presented by
the bill. The Supreme Court, after stating the nature of the
corporation and the relations and course of dealing of the
State with it, and citing cases to prove that Carrick Academy
is a public agency, refers to the decision below and the citation
there of the *Dartmouth College case* only in order to show
that that case was misapplied.

But the plaintiffs in error say further that the question of
their rights under the Constitution of the United States nec-
essarily was involved in a decision upon the bill, and that
that is enough when the validity of a state law is concerned.
*Columbia Water Power Co.* v. *Columbia Electric Street Ry., Light
& Power Co.,* 172 U. S. 475, 488 ; *McCullough* v. *Virginia,*
172 U. S. 102, 117. These and similar cases, however, are
not to be pressed to the point that, whenever it appears
that the state law logically might have been assailed as invalid

under the Constitution of the United States, upon grounds more or less similar to those actually taken, the question is open. If a case is carried through the state courts upon arguments drawn from the state constitution alone, the defeated party cannot try his chances here merely by suggesting for the first time when he takes his writ of error that the decision is wrong under the Constitution of the United States. *Crowell* v. *Randell,* 10 Pet. 367, 398; *Simmerman* v. *Nebraska,* 116 U. S. 54; *Hagar* v. *California,* 154 U. S. 639; *Erie Railroad* v. *Purdy,* 185 U. S. 148, 153.

We are the less uneasy at the conclusion to which we are forced, that we do not apprehend that the statute of Tennessee is invalid for the reason now put forward. That reason is that the General Assembly of the State had no authority to authorize the taking of the property of this corporation for the private use of another. This objection might be urged with some force perhaps to the lease that was made. But the statute, which alone could be brought in question here, merely authorized the trustees of Carrick Academy to let the academy property to the trustees of the Winchester Normal College for not more than fifty years, and required the trustees of the college to keep the property in good condition and free from debt or incumbrance, if the lease was made. It said nothing about terms. It left the academy free. There was no taking of property, but at most an authority to change an investment. So far as the act shows on its face, which is all that we have before us, it might have contemplated a lease of the present grounds merely as a means to keeping up the academy with increased resources in a better place elsewhere.

*Writ of error dismissed.*