KALEIALII et al. v. SULLIVAN et al.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1917.)

No. 2818.

1. DEEDS ⬖124(1)—ESTATES CREATED—FEE SIMPLE.

A deed to the grantor's daughters, after stating that it was an absolute conveyance and reciting that it was made to provide for the daughters, so as to "prevent unavoidable convenience" and for their care and maintenance, and that it was the grantor's desire that they might be "benefited with the proceeds arising therefrom, together with the rents to their children and assigns, as well as the payments to be made for the real estate hereunder conveyed and described premises to the end of their lives and forever to their heirs," provided that the grantor thereby made, sold, conveyed, released, and forever quitclaimed to the daughters property therein described, and that appurtenances, rights, and privileges, as well as the proceeds thereof, should belong to the daughters and their repre-

sentatives and heirs and assigns forever. It further provided that the daughters until their death "shall leave these lands and rights appertaining to whomsoever they may demise, providing it be done in truth and honesty, but should it not be made in accordance with the above such as the conveyance and acknowledgment thereof," then the land should revert to the grantor and his heirs. "and the benefit shall only be theirs providing the second party have no children, but in the event that the parties of the second part having children all the rights shall descend to them in the manner as enjoyed by their parents, provided that, if one of the parties of the second part should die without any issue living at the time, all the rights above mentioned shall descend to the survivor." *Held* that, where both daughters had children and there was no claim that the contingency as to a dishonest devise had occurred, the daughters took a fee simple.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 423, 424.]

2. DEEDS ☞93—CONSTRUCTION—INTENTION.

A deed is to be construed according to the intention of the parties as manifested by the entire instrument, even though it may not comport with the language of a particular part.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232.]

3. DEEDS ☞96—CONSTRUCTION—RECITALS.

Where a deed contained recitals as to the property of the conveyance, the words used in the recitals, though not a necessary part of the deed, might be considered in ascertaining the intention of the grantor.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 256–260.]

4. DEEDS ☞123—CONSTRUCTION—"CHILDREN."

The rule of the common law is that in a conveyance by deed, the word "children" is not the equivalent of heirs.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 347–374, 413–435.

For other definitions, see Words and Phrases, First and Second Series, Child.]

5. DEEDS ☞36—REQUISITES AND SUFFICIENCY—WORDS OF CONVEYANCE.

Where a deed provided that the grantor did thereby sell, give, convey, release, effectuate, and forever quitclaim to the grantees, the formal word "grant" was not necessary, as the words used plainly manifested an intent that the estate should pass by the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 55, 56.]

6. DEEDS ☞90—CONSTRUCTION—AMBIGUITY.

Where, under a deed, the grant itself was clear, that construction of a clause which harmonized with the grant and was in conformity with the operative part of the deed should be given such clause.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 234–237, 247, 248.]

7. DEEDS ☞90—CONSTRUCTION—DECLARATIONS AS TO CHARACTER OF INSTRUMENT.

A statement in a deed that it was an absolute conveyance of land was not to be wholly ignored in construing the deed; it being a part of the instrument.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 234–237, 247, 248.]

8. DEEDS ☞123—CONSTRUCTION—ESTATES CREATED—"ABSOLUTE CONVEYANCE."

An "absolute conveyance" of land ordinarily means a transfer of an unrestricted or unconditional estate.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 345–374, 413–435.

For other definitions, see Words and Phrases, Second Series, Absolute Conveyance.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the Supreme Court of the Territory of Hawaii.

Action by Mary Kaleialii and others against Henrietta Sullivan and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

This is an action brought to quiet title to certain real estate in Hawaii, all the parties claiming title from a common source, a deed from Alexander Adams, Jr., dated September 15, 1858, and running to the daughters of the grantor, Peke and Maria. The deed was in the Hawaiian language, but a translation of the material parts is as follows:

"This deed is an absolute conveyance of land, made this 15th day of September in the year of our Lord one thousand eight hundred and fifty-eight, between Alexander Adams, Jr., of Honolulu, Island of Oahu, the party of the first part, and Peke and Maria, his daughters, of the same place, of the second part.

"Witnesseth, that the above-named Alexander Adams, Jr., of his own volition, in order to provide for his daughters, Peke and Maria, so as to prevent unavoidable convenience and for the care of their person with things necessary as well as their maintenance; and whereas, the said Alexander Adams, Jr., because of his own desire for the aforesaid daughters, that they may be benefited with the proceeds arising therefrom, together with the rents to their children and assigns, as well as the payments to be made for the real estate hereunder conveyed and described premises to the end of their lives and forever to their heirs, independent of all restraint and interference of their husbands or those they may have hereafter, providing no conveyance is made to their husbands:

"Now, therefore, this deed showeth that the above-mentioned Alexander Adams, Jr., in consideration of the statements herein made and of two dollars paid into his hands by the parties of the above-mentioned second part, which has been received, in witness of the making, sale, giving, conveying, releasing, effectuating, and confirming, therefore, by this deed, do make, sell, give, convey, release, effectuate, and forever quitclaim to the parties of the second part hereinabove mentioned all those certain pieces of land situated at Olomana, Honolulu, and the house lot situated in the town of Honolulu, along Hotel street (L. C. A. 5049B) to Keoki no Malule, deeded to me on the 3d day of August, 1854, royal patent 1918, acknowledged on the 11th day of April, 1855, and also grant 2349 and 2530, signed on the 8th day of April, 1857, and on the 14th day of September, 1858, and the house lot sold to me by deed from Alexander Adams, signed on the 22d day of June, 1850, and acknowledged by A. Bates on the 22d day of August, 1850, the descriptions of which are as follows: * * * To have, together with the things thereupon, the houses and appurtenances, rights, and privileges, as well as the proceeds thereof, either in law or equity, to receive from said lands and from all sources and all things, together with the interests and rights appertaining to the party of the first part, shall belong to Peke and Maria, and to their representatives and heirs and assigns forever.

"And the above-mentioned Alexander Adams, Jr., and until the decease of his daughters they shall leave these lands and rights appertaining to whomsoever they may demise, providing it be done in truth and honesty, but should it not be made in accordance with the above such as the conveyance and the acknowledgment thereof, then in such case these lands should revert, together with all appurtenances, to Alexander Adams, Jr., of the first part, and to his heirs, and the benefits shall only be theirs, providing the second party have no children, but in the event that the parties of the second part having children all the rights shall descend to them in the manner as enjoyed by their parents, provided that, if one of the parties of the second part should die without any issue living at the time, all the rights above mentioned shall descend to the survivor of them. The parties of the second part hereinabove set forth do hereby witness under oath and by affirmation, as well as to all the contents of this deed, and do hereby bind and do both consent to and with the party of the first part hereinabove mentioned to ratify and certify and to

bond and execute to the truth of this deed, as well as to all the conditions herein mentioned.

"In witness whereof, I hereby sign with my hand and seal this day and the year first above written.                        Alexander Adams, Jr."

Peke afterwards conveyed all her interest to her sister and cograntee, Maria. Thereafter Maria conveyed to Robertson and Bolte, trustees, and they conveyed to Sullivan and Bulkley, and their heirs and assigns forever, who and whose assigns have been in possession until the present time. Bulkley is one of the defendants herein, and the other defendants are the successors in interest of Sullivan. Maria died in 1894 leaving children; Peke died in 1914, leaving two children—Mary Kaleialii, born in 1859, one of the plaintiffs herein, and Robert N. Boyd, born in 1863, who died in 1914, leaving four children, Rebecca L. Miles, Annie K. Boyd, Robert N. Boyd, and Victor K. Boyd, the other plaintiffs herein. The Supreme Court of the territory of Hawaii held that the deed gave to each of the daughters a fee simple in an undivided half of the land described therein, and it is to review that decision that the defendants below sued out writ of error to this court.

Andrews & Pittman and Frank Andrade, all of Honolulu, T. H., for plaintiffs in error.

Holmes & Olson and Frear, Prosser, Anderson & Marx, all of Honolulu, T. H. (E. B. McClanahan and S. H. Derby, both of San Francisco, Cal., of counsel), for defendants in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The controlling question in the litigation is the construction of the deed from Alexander Adams, Jr., to his daughters, Peke and Maria. The plaintiffs in error contend that the proper construction is that Adams created in each one of his daughters an estate for the life of each one of them, with a remainder over to their children, if any such children should survive the mother or mothers. Defendants in error contend that the deed gave Peke and Maria each a fee simple in half of the land, and that Peke's interest passed to Maria, and that the fee simple in both halves passed from Maria, through Robertson and Bolte, to the defendants in error.

[2, 3] The true principle is to construe the deed according to the intention of the parties as manifested by the entire instrument, eventhough it may not comport with the language of a particular part of it. The recitals in the deed under examination, and which may be useful to aid us in arriving at the intent, are a kind of explanation by the grantor. The first purpose disclosed by them is "to provide for" the daughters, so as to prevent inconvenience to them, and also to provide the care of their persons with necessary things, and to provide also for their maintenance. The words used in the recitals are not a necessary part of the deed, but, being in the instrument, they afford a clue to the intention of the maker. Washburn on Real Property, § 2351. The second clause of the recital explains the wish of the father that his daughters may be benefited in the way there mentioned; that is, with the proceeds arising from the lands, together with the rentals, "to their children and their assigns, as well as the payments to be made for the real estate * * * to the end of their lives and forever to their heirs, independent of all restraint and interference of

their husbands or those they may have hereafter, providing no conveyance is made to their husbands." These words specially pertain to two things—one, rentals to come from the lands; and another, proceeds to come from payments to be made for the lands conveyed by the deed. Rentals might accrue while the real estate was rented and unsold by the grantees, but payments for the lands conveyed could only come, should those in whom the right to convey was vested thereafter sell and convey their title and ownership. And as the present conveyance was to the daughters, Peke and Maria, they alone could convey title to create proceeds.

[4] It is argued by defendants in error that by the words "to their children and assigns" those two classes are placed on an equality, and that inasmuch as there could be no assigns, except those to whom the daughters might convey, a reasonable construction is that by "children and assigns" are meant the heirs of the body of the grantor, Adams, and the assigns of the grantees. No cases are cited, however, to justify a construction which regards children as equivalent to heirs. The rule of the common law is that in a conveyance by deed the word "children" is not the equivalent of "heirs." Adams v. Ross, 30 N. J. Law, 505, 82 Am. Dec. 237; 4 Kent's Comm. 6. In construing wills the rule is much more liberal. But, notwithstanding the general common-law rule relating to the administration of the law of real estate, it is to be said that some confusion has been created in the deed under examination by the use of the word "heirs" in the additional language included in the premises or recitals, that the daughters are to take "to the end of their lives and forever to their heirs," independent of all restraint of their husbands. Considering the whole clause, there is room for contention that these latter words made an estate of inheritance, and that by them technical use of the word "children" was qualified.

[5] But we may concede that the preliminary parts of the deed are not sufficiently clear to tell us that a fee simple was intended to be conveyed, and with this concession in mind let us proceed to the operative words of grant as of special importance:

"This deed showeth that * * * Alexander Adams, Jr., * *' * in consideration of the statements *· * * and of two dollars paid, * *· * which has been received, * * * by this deed do make, sell, give, convey, release, effectuate, and forever quitclaim to the parties of the second part hereinabove mentioned all those certain pieces of land. * * *" etc.

Here, too, there is somewhat clumsy use of words and sentences. but that makes no difference, for the words, sell, give, convey, release, effectuate, and forever quitclaim are sufficient to show the clear intent of Adams to grant his interest or estate in the lands described in the deed. We are not losing thought that the word "grant" is omitted. But as the other words so plainly manifest that Adams intended that his estate should pass by the deed the formal word grant was not necessary. Shove v. Pincke, 5 T. R. 124; Lynch v. Livingston, 8 Barb. (N. Y) 463–485; Washburn on Real Property, § 2285.

Next taking up the habendum clause, and we have these words:

"To have together with the things thereupon * * * rights and privileges * * * either in law or equity, to receive from said lands * * *

together with the interest and rights appertaining to the party of the first part shall belong to Peke and Maria and to their representatives and heirs and assigns forever."

In this part of the deed there are no words of limitation of the estate or extent of ownership which the daughters were to have in the lands conveyed, nor any declaration to what uses the daughters shall have the property granted.

We may therefore pass on to the next part of the deed wherein the grantor declares that until the death of the daughters they shall leave the lands and rights appurtenant to whomsoever they may devise if it "be done in truth and honesty"; but if not made "in accordance with the above such as the conveyance and acknowledgment thereof," then and in that event the lands should "revert" to Adams and his heirs, and the benefits shall only be the daughters, if the daughters have no children, but if they have children then all the rights shall "descend to them in the manner enjoyed by their parents," provided, if one of the daughters should die without issue living, all the "rights" theretofore mentioned in the deed should "descend" to the survivor. Now, by separating these somewhat intricate matters, we have these qualifying clauses: (1) The daughters until death had the right to leave the lands and rights appertaining to any one they pleased to devise them to, provided they should devise honestly as by deed and acknowledment. (2) Should they not devise honestly as by deed and acknowledgment, then reversion of the premises to the father and to his heirs would follow, and the daughters would have the benefits only provided they had no children. (3) But if the daughters had children all the rights should descend to the children in the manner enjoyed by their parents. (4) Should either daughter die without issue, all the rights mentioned in the preceding parts of the deed should descend to the survivor of the daughters.

This situation is the result: Until death of the daughters they could devise honestly to whomsoever they pleased. Should there be a devise dishonestly made, the lands and appurtenances would revert to the father. The contingency upon which reversion could arise was a dishonest devise by the daughters. But no issue on that point is presented. An estate for life only would have been somewhat incompatible with the lands reverting to the grantor and his heirs. Another contingency was the daughters having no children; but, as there were children, that contingency never arose, and all the rights were to descend to the children as such rights were enjoyed by the parents of such children. If one daughter should die childless, all rights by the deed conveyed should descend to the surviving daughter. We cannot gather that, if one of the daughters should die, with issue, the land would go to her children in remainder not by descent. The granting clause conveyed an estate in fee, and inasmuch as the grantor in subdivision 3 of the clause just hereinbefore referred to declares that, if his daughters have children, all the rights shall descend to them in the manner as enjoyed by their parents, it follows that, unless there was disposition of

the fee by will or deed by the parents, the children took in fee simple by descent.

[6] It is not easy to reconcile that part of clause 2 above stated wherein the reversion is provided for with clause 3. However, we are not called upon to enter upon an elaborate discussion of inconsistencies between the two sentences, because the grant itself is clear, and, as section 3 harmonizes with the grant, the construction which must prevail is that which is in conformity with the operative part of the deed. Huntington v. Havens, 5 Johns. Ch. (N. Y.) 23; Lamb v. Medsker, 35 Ind. App. 662, 74 N. E. 1012; Dunbar v. Aldrich, 79 Miss. 698, 31 South. 341; Pritchett v. Jackson, 103 Md. 696, 63 Atl. 965; Barnett v. Barnett, 104 Cal. 298, 37 Pac. 1049; Green et al. v. Sutton, 50 Mo. 186; Nightingale et al., Assignees, v. Hidden, 7 R. I. 115; Edwards v. Beall, 75 Ind. 402; Adams v. Ross, 30 N. J. Law, 505, 82 Am. Dec. 237; Young v. Smith, 1 Equity Cases, Law Reports, 180; Simerson, v. Simerson, 20 Hawaii, 57; Nahaolelua v. Heen, 20 Hawaii, 372; Lucas v. Lucas, 20 Hawaii, 433.

[7, 8] In thus reaching the conclusion that the deed conveyed an estate in fee simple to Peke and Maria, we have given no attention to the opening words of declaration in the instrument that the deed is an "absolute conveyance of. land," because we thought it a safer rule of construction to get at the intent of the grantor by relying upon the grant and habendum clauses and recitals, rather than upon the preliminary statement of the grantor. This declaration of the grantor is, however, not to be wholly ignored for it is part of the instrument. And when we regard the declaratory words used, they but add support to the opinion we have reached, for an absolute conveyance of land ordinarily means the transfer of an unrestricted or unconditional estate. Water Power Co. v. Street Railway Co., 172 U. S. 475, 19 Sup. Ct. 247, 43 L. Ed. 521; 2 Chitty's Blackstone, 104; Fuller v. Missroon, 35 S. C. 314, 14 S. E. 714; Converse v. Kellogg, 7 Barb. (N. Y.) 590, 597.

The judgment is affirmed.