INDIANA ᴇx ʀᴇʟ. ANDERSON *v.* BRAND,
TRUSTEE.

No. 256.   Argued January 10, 1938.—Decided January 31, 1938.

*Messrs. Paul R. Shafer* and *Thomas F. O'Mara,* with whom *Mr. Denver Harlan* was on the brief, for petitioner.

*Messrs. Raymond Brooks* and *Asa J. Smith,* with whom *Mr. George C. Gertman* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner sought a writ of mandate to compel the

respondent [1] to continue her in employment as a public school teacher. Her complaint alleged that as a duly licensed teacher she entered into a contract in September, 1924, to teach in the township schools and, pursuant to successive contracts, taught continuously to and including the school year 1932–1933; that her contracts for the school years 1931–1932 and 1932–1933 contained this clause: "It is further agreed by the contracting parties that all of the provisions of the Teachers' Tenure Law, approved March 8, 1927, shall be in full force and effect in this contract"; and that by force of that Act she had a contract, indefinite in duration, which could be cancelled by the respondent only in the manner and for the causes specified in the Act. She charged that in July, 1933, the respondent notified her he proposed to cancel her contract for cause; that, after a hearing, he adhered to his decision and the County Superintendent affirmed his action; that, despite what occurred in July, 1933, the petitioner was permitted to teach during the school year 1933–1934 and the respondent was presently threatening to terminate her employment at the end of that year. The complaint alleged the termination of her employment would be a breach of her contract with the school corporation. The respondent demurred on the grounds that (1) the complaint disclosed the matters pleaded had been submitted to the respondent and the County Superintendent who were authorized to try the issues and had lawfully determined them in favor of the respondent; and (2) the Teachers' Tenure Law had been repealed in respect of teachers in township schools. The demurrer was sustained and the petitioner appealed to the State

---

[1] The proceeding was instituted against the respondent's predecessor who then held the office of School Trustee; the respondent was subsequently substituted as defendant. Nothing turns on this substitution and both trustees will be referred to as the respondent.

Supreme Court which affirmed the judgment.[2]   The court did not discuss the first ground of demurrer relating to the action taken in the school year 1932–1933, but rested its decision upon the second, that, by an Act of 1933, the Teachers' Tenure Law had been repealed as respects teachers in township schools; and held that the repeal did not deprive the petitioner of a vested property right and did not impair her contract within the meaning of the Constitution.   In its original opinion the Court said: "The relatrix contends . . . that, having become a permanent teacher under the Teachers' Tenure Law before the amendment, she had a vested property right in her indefinite contract, which may not be impaired under the Constitution.   The question is whether there is a vested right in a permanent teacher's contract; whether, under the tenure law, there is a grant which cannot lawfully be impaired by a repeal of the statute."   Where the state court does not decide against a petitioner or appellant upon an independent state ground, but deeming the federal question to be before it, actually entertains and decides that question adversely to the federal right asserted, this Court has jurisdiction to review the judgment if, as here, it is a final judgment.[3]   We cannot refuse jurisdiction because the state court might have based its decision, consistently with the record, upon an independent and adequate non-federal ground.   And since the amendment of the judiciary act of 1789 [4] by the act of February 5, 1867 [5] it has always been held this Court may examine the opinion of the state court to ascertain whether a fed-

[2] 5 N. E. (2d) 531; on rehearing, 7 N. E. (2d) 777; dissenting opinion of Treanor, J., 5 N. E. (2d) 913.

[3] *Murdock* v. *Memphis,* 20 Wall. 590, 635–6; *Henderson Bridge Co.* v. *Henderson,* 173 U. S. 592, 608; *Rogers* v. *Hennepin County,* 240 U. S. 184, 188–189; *Grayson* v. *Harris,* 267 U. S. 352, 358; *Virginia* v. *Imperial Coal Sales Co.,* 293 U. S. 15, 16; *International Steel Co.* v. *National Surety Co.,* 297 U. S. 657, 666.

[4] § 25, 1 Stat. 85.

[5] § 2, 14 Stat. 386.

eral question was raised and decided, and whether the court rested its judgment on an adequate non-federal ground.[6] Any ambiguity arising from the generality of the court's reference to the Constitution is resolved by a certificate signed by all the Justices of the Court, made a part of the record, to the effect that the reference to the Constitution in the opinion was to Art. I, § 10 of the Constitution of the United States.[7] It thus appearing that the constitutional validity of the repealing act was drawn in question, and the statute sustained, we issued the writ of certiorari.

The court below holds that in Indiana teachers' contracts are made for but one year; that there is no contractual right to be continued as a' teacher from year to year; that the law grants a privilege to one who has taught five years and signed a new contract to continue in employment under given conditions; that the statute is directed merely to the exercise of their powers by the school authorities and the policy therein expressed may be altered at the will of the legislature; that in enacting laws for the government of public schools the legislature exercises a function of sovereignty and the power to control public policy in respect of their management and operation cannot be contracted away by one legislature so as to create a permanent public policy unchangeable by succeeding legislatures. In the alternative the court declares that if the relationship be considered as controlled by the rules of private contract the provision for reëm-

[6] *Murdock* v. *Memphis*, 20 Wall. 590, 633–634; *Kreiger* v. *Shelby R. Co.*, 125 U. S. 39, 44; *Bank of Commerce* v. *Tennessee*, 163 U. S. 416, 421; *Thompson* v. *Maxwell Land Grant Co.*, 168 U. S. 451, 456; *Columbia Water Power Co.* v. *Columbia Electric St. Ry. Co.*, 172 U. S. 475, 488–489; *Abie State Bank* v. *Bryan*, 282 U. S. 765, 771; *Utley* v. *St. Petersburg*, 292 U. S. 106, 111; *Fox Film Corp.* v. *Muller*, 296 U. S. 207, 209.

[7] *International Steel Co.* v. *National Surety Co.*, 297 U. S. 657, 662.

ployment from year to year is unenforceable for want of mutuality.

As in most cases brought to this court under the contract clause of the Constitution, the question is as to the existence and nature of the contract and not as to the construction of the law which is supposed to impair it. The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions within the protection of Art. I, § 10.[8] If the people's representatives deem it in the public interest they may adopt a policy of contracting in respect of public business for a term longer than the life of the current session of the legislature. This the petitioner claims has been done with respect to permanent teachers. The Supreme Court has decided, however, that it is the state's policy not to bind school corporations by contract for more than one year.

On such a question, one primarily of state law, we accord respectful consideration and great weight to the views of the State's highest court but, in order that the constitutional mandate may not become a dead letter, we are bound to decide for ourselves whether a contract was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation.[9] This involves an appraisal of the statutes of the State and the decisions of its courts.

The courts of Indiana have long recognized that the employment of school teachers was contractual and have

---

[8] *New Jersey* v. *Yard,* 95 U. S. 104, 113, 114.

[9] *Phelps* v. *Board of Education,* 300 U. S. 319, 322, and cases cited.

afforded relief in actions upon teachers' contracts.[10]   An Act adopted in 1899 [11] required all contracts between teachers and school corporations to be in writing, signed by the parties to be charged, and to be made a matter of public record.   A statute of 1921 [12] enacted that every such contract should be in writing and should state the date of the beginning of the school term, the number of months therein, the amount of the salary for the term, and the number of payments to be made during the school year.

In 1927 the State adopted the Teachers' Tenure Act [13] under which the present controversy arises.   The pertinent portions are copied in the margin.[14]   By this Act it was provided that a teacher who has served under con-

---

[10] *City of Crawfordsville* v. *Hays*, 42 Ind. 200; *Charlestown School Twp.* v. *Hay*, 74 Ind. 127; *Harrison School Twp.* v. *McGregor*, 96 Ind. 185; *Kiefer* v. *Troy School Twp.*, 102 Ind. 279; 1 N. E. 560; *Sparta School Twp.* v. *Mendell*, 138 Ind. 188; 37 N. E. 604; *School City of Lafayette* v. *Bloom*, 17 Ind. App. 461; 46 N. E. 1016; *Henry School Twp.* v. *Meredith*, 32 Ind. App. 607; 70 N. E. 393; *Gregg School Twp.* v. *Hinshaw*, 76 Ind. App. 503; 132 N. E. 586.

[11] Act of Feb. 28, 1899, G. L. Ind. 1899, p. 173, Burns' Ind. Stat. Ann. 1933, §§ 28–4302 and 28–4303.

[12] Act of March 7, 1921; Acts of 1921, p. 195; Burns' Ind. Stat. Ann. 1933, § 28–4304.

[13] Act of March 8, 1927; Acts of 1927, p. 259, Burns' Ind. Stat. Ann. Supp. 1929, § 6967.1.

[14] "Section 1. Be it enacted by the general assembly of the State of Indiana, That any person who has served or who shall serve under contract as a teacher in any school corporation in the State of Indiana for five or more successive years, and who shall hereafter enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation. . . .   Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract.   Such an indefinite contract shall remain in force unless succeeded by a new contract signed by both parties or unless it shall be cancelled as provided in section 2 of this act: *Provided*, That teachers' contracts shall provide for the annual determination of the date of beginning and length of school terms by

tract for five or more successive years, and thereafter enters into a contract for further service with the school corporation, shall become a permanent teacher and the contract, upon the expiration of its stated term, shall be deemed to continue in effect for an indefinite period, shall be known as an indefinite contract, and shall remain in force unless succeeded by a new contract or cancelled as provided in the Act. The corporation may cancel the

the school corporation: and, *Provided, further,* That teachers' contracts may contain provisions for the fixing of the amount of annual compensation from year to year by a salary schedule adopted by the school corporation and such schedule shall be deemed to be a part of such contract: and, *Provided, further,* That such schedule may be changed by such school corporation on or before May 1st of any year, such changes to become effective at the beginning of the following school year: *Provided,* That all teachers affected by such changes shall be furnished with printed copies of such changed schedule within thirty days after its adoption.

"Sec. 2. Any indefinite contract with a permanent teacher as defined in section 1 of this act may be cancelled only in the following manner: Not less than thirty days nor more than forty days before the consideration by any school corporation of the cancellation of any such contract, such teacher shall be notified in writing of the exact date, time when and place where such consideration is to take place; and such teacher shall be furnished a written statement of the reasons for such consideration, within five days after any written request for such statement; and such teacher shall, upon written request for a hearing, filed within fifteen days after the receipt by said teacher of notice of date, time and place of such consideration, be given such a hearing before the school board, in the case of cities and towns, and before the township trustee, in the case of townships; such hearing shall be held not less than five days after such request is filed and such teacher shall be given not less than five days' notice of the time and place of such hearing. Such teacher, at the hearing, shall have a right to a full statement of the reasons for the proposed cancellation of such contract, and shall have a right to be heard, to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract. No such contract shall be cancelled until

contract, after notice and hearing, for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good or just cause, but not for political or personal reasons. The teacher may not cancel the contract during the school term nor for a period of thirty days previous to the beginning of any term (unless by mutual agreement) and may cancel only upon five days' notice.

the date set for consideration of the cancellation of such contract; nor until after a hearing is held, if such hearing is requested by said teacher; nor until, in the case of teachers, supervisors, and principals, the city or town superintendents, in cities and towns, and the county superintendents, in townships and in cities and towns not having superintendents, shall have given the school corporation his recommendations thereon, and it shall be the duty of such superintendent to present such recommendations upon five days' written notice to him by such school corporation. . . . Cancellation of an indefinite contract of a permanent teacher may be made for incompetency, insubordination (which shall be deemed to mean a wilful refusal to obey the school laws of this state or reasonable rules prescribed for the government of the public schools of such corporation), neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause, but may not be made for political or personal reasons: . . .

"Sec. 4. No permanent teacher shall be permitted to cancel his indefinite contract during the school term for which his said contract is in effect nor for a period of thirty (30) days previous to the beginning of such school term unless such cancellation is mutually agreed upon; such permanent teacher shall be permitted to cancel his indefinite contract at any other time by giving a five days' notice to the school corporation. Any permanent teacher cancelling his indefinite contract in any other manner than in this section provided shall be deemed guilty of unprofessional conduct and the state superintendent is hereby authorized to suspend the license of such teacher for a period of not exceeding one year. . . .

"Sec. 6. This act shall be construed as supplementary to an act of the general assembly, page 195, acts 1921, entitled, 'An act concerning teachers' contracts and providing for the repeal of conflicting laws.' "

By an amendatory Act of 1933 [15] township school corporations were omitted from the provisions of the Act of 1927. The court below construed this Act as repealing the Act of 1927 so far as township schools and teachers are concerned and as leaving the respondent free to terminate the petitioner's employment. But we are of opinion that the petitioner had a valid contract with the respondent, the obligation of which would be impaired by the termination of her employment.

Where the claim is that the State's policy embodied in a statute is to bind its instrumentalities by contract, the cardinal inquiry is as to the terms of the statute supposed to create such a contract. The State long prior to the adoption of the Act of 1927 required the execution of written contracts between teachers and school corporations, specified certain subjects with which such contracts must deal, and required that they be made a matter of public record. These were annual contracts, covering a single school term. The Act of 1927 announced a new policy that a teacher who had served for five years under successive contracts, upon the execution of another was to become a permanent teacher and the last contract was to be indefinite as to duration and terminable by either party only upon compliance with the conditions set out in the statute. The policy which induced the legislation evidently was that the teacher should have protection against the exercise of the right, which would otherwise inhere in the employer, of terminating the employment at the end of any school term without assigned reasons and solely at the employer's pleasure. The state courts in earlier cases so declared.[16]

---

[15] Act of March 1, 1933, Acts of 1933, p. 716, Burns' Ind. Stat. Ann. 1933, § 28–4307.

[16] *Ratcliff* v. *Dick Johnson School Twp.,* 204 Ind. 525; 185 N. E. 143; *Kostanzer* v. *State,* 205 Ind. 536; 187 N. E. 337; *State* v. *Stout,* 206 Ind. 58; 187 N. E. 267; *Arburn* v. *Hunt,* 207 Ind. 61; 191 N. E. 148.

The title of the Act is couched in terms of contract. It speaks of the making and cancelling of indefinite contracts. In the body the word "contract" appears ten times in § 1, defining the relationship; eleven times in § 2, relating to the termination of the employment by the employer, and four times in § 4, stating the conditions of termination by the teacher.

The tenor of the Act indicates that the word "contract" was not used inadvertently or in other than its usual legal meaning. By § 6 it is expressly provided that the Act is a supplement to that of March 7, 1921, *supra*, requiring teachers' employment contracts to be in writing. By § 1 it is provided that the written contract of a permanent teacher "shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract." Such an indefinite contract is to remain in force unless succeeded by a new contract signed by both parties or cancelled as provided in § 2. No more apt language could be employed to define a contractual relationship. By § 2 it is enacted that such indefinite contracts may be cancelled by the school corporation only in the manner specified. The admissible grounds of cancellation, and the method by which the existence of such grounds shall be ascertained and made a matter of record, are carefully set out. Section 4 permits cancellation by the teacher only at certain times consistent with the convenient administration of the school system and imposes a sanction for violation of its requirements. Examination of the entire Act convinces us that the teacher was by it assured of the possession of a binding and enforceable contract against school districts.

Until its decision in the present case the Supreme Court of the State had uniformly held that the teacher's right to continued employment by virtue of the indefinite contract created pursuant to the Act was contractual.

In *School City of Elwood* v. *State ex rel. Griffin,* 203 Ind. 626; 180 N. E. 471, it was said (p. 634):

"The position of a teacher in the public schools is not a public office, but an employment by contract between the teacher and the school corporation. The relation remains contractual after the teacher has, under the provisions of a teachers' tenure law, become a permanent teacher—but the terms and conditions of the contract are thereafter governed primarily by the statute."

In *Kostanzer* v. *State,* 205 Ind. 536; 187 N. E. 337, an action in mandate to compel reinstatement of a discharged teacher, it was said (p. 547):

"If appellee's position is not an office appellants insist that mandamus is not available for the reason that the granting of mandatory relief results in enforcing a purely contractual right. It is true that mandatory relief against appellants will result in enforcing appellee's rights under her contract; but the duty which the judgment of the trial court compelled appellants to perform was a duty enjoined by statute and not by contract. The contract between appellants and appellee created a relation which entitled appellee to have appellants perform the duty in question; but the duty was not imposed by any provision of the contract."

And in the same case it was also said (pp. 548–549):

"The tenure act permits a teacher to cancel his contract at any time after the close of a school term up to thirty days prior to the beginning of the next school term, provided five days' notice is given, and appellant contends that there was no contract between appellee and appellants for the reason 'that a contract which does not bind both parties binds neither of them.' This proposition is undoubtedly supported by the law of contracts. But there is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege of rescission or cancellation on terms not reserved to the former party. The local school corporations are agents of the state in the administration of the public schools and the

General Assembly has the power to prescribe the terms of the contract to be executed by these agents."

In *State* v. *Board of School Commissioners of Indianapolis,* 205 Ind. 582; 187 N. E. 392, an action in mandate to compel reinstatement of a discharged teacher, the court referred to the indefinite contract of a permanent teacher and held that it remained in full force and effect until succeeded by a new contract or cancelled as provided in § 2 of the Act.

In *Arburn* v. *Hunt,* 207 Ind. 61; 191 N. E. 148, it is said: "The source of authority for the so-called permanent teacher's contract is the statute. The legislature need not have provided for such contracts, but, since it did so provide, the entire statute, with all of its provisions, must be read into and considered as a part of the contract."

We think the decision in this case runs counter to the policy evinced by the Act of 1927, to its explicit mandate and to earlier decisions construing its provisions. Also that the decision in *Phelps* v. *Board of Education,* 300 U. S. 319, that the Act there considered did not create a contract, is not, as the court below suggests, authority for a like result here. *Dodge* v. *Board of Education,* 302 U. S. 74, on which the respondent relies is distinguishable, because the statute there involved did not purport to bind the respondent by contract to the payment of retirement annuities, and similar legislation in respect of other municipal employees had been consistently construed by the courts as not creating contracts.

The respondent urges that every contract is subject to the police power and that in repealing the Teachers' Tenure Act the legislature validly exercised that reserved power of the state. The sufficient answer is found in the statute. By § 2 of the Act of 1927 power is given to the school corporation to cancel a teacher's indefinite contract for incompetency, insubordination (which is to be deemed to mean wilful refusal to obey the school laws of the

state or reasonable rules prescribed by the employer), neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause. The permissible reasons for cancellation cover every conceivable basis for such action growing out of a deficient performance of the obligations undertaken by the teacher, and diminution of the school requirements. Although the causes specified constitute in themselves just and reasonable grounds for the termination of any ordinary contract of employment, to preclude the assumption that any other valid ground was excluded by the enumeration, the legislature added that the relation might be terminated for any other good and just cause. Thus in the declaration of the state's policy, ample reservations in aid of the efficient administration of the school system were made. The express prohibitions are that the contract shall not be cancelled for political or personal reasons. We do not think the asserted change of policy evidenced by the repeal of the statute is that school boards may be at liberty to cancel a teacher's contract for political or personal reasons. We do not understand the respondent so to contend. The most that can be said for his position is that, by the repeal, township school corporations were again put upon the basis of annual contracts, renewable at the pleasure of the board. It is significant that the Act of 1933 left the system of permanent teachers and indefinite contracts untouched as respects school corporations in cities and towns of the state. It is not contended, nor can it be thought, that the legislature of 1933 determined that it was against public policy for school districts in cities and towns to terminate the employment of teachers of five or more years' experience for political or personal reasons and to permit cancellation, for the same reasons, in townships.

Our decisions recognize that every contract is made subject to the implied condition that its fulfillment may

be frustrated by a proper exercise of the police power but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end,[17] and the Supreme Court of Indiana has taken the same view in respect of legislation impairing the obligation of the contract of a state instrumentality.[18] The causes of cancellation provided in the Act of 1927 and the retention of the system of indefinite contracts in all municipalities except townships by the Act of 1933 are persuasive that the repeal of the earlier Act by the latter was not an exercise of the police power for the attainment of ends to which its exercise may properly be directed.

As the court below has not passed upon one of the grounds of demurrer which appears to involve no federal question, and may present a defense still open to the respondent, we reverse the judgment and remand the cause for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

In my opinion this reversal unconstitutionally limits the right of Indiana to control Indiana's public school system. I believe the judgment should be affirmed because:

---

[17] *Home Bdg. & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 438; *Worthen Co.* v. *Thomas,* 292 U. S. 426, 431, 432; *Worthen Co.* v. *Kavanaugh,* 295 U. S. 56, 60; *Treigle* v. *Acme Homestead Assn.,* 297 U. S. 189, 197.

[18] *Central Union Tel. Co.* v. *Indianapolis Tel. Co.,* 189 Ind. 210; 126 N. E. 628; *Downing* v. *Indiana State Board of Agriculture,* 129 Ind. 443; 28 N. E. 123.

(1) It does not appear in the record that a federal question was necessarily involved in the decision of the state court; [1]

(2) The record does not disclose beyond a reasonable doubt [2] that Indiana, by the Teachers Act of 1927, surrendered its sovereign, governmental right to change and alter at will legislative policy related to the public welfare, or that its legislature had the power to do so.

*First.* It does not appear from the record that a federal question "was necessarily involved in the decision; and that the state court could not have given the judgment or decree which they passed, without deciding it." [3] Therefore, "it is a matter of no consequence to us that the court may have gone further and decided a federal question." [4] "Where a case in this Court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued and is not departed from without important reasons." [5]

Petitioner's complaint disclosed: that, after a hearing, she was removed from her position as a teacher for causes including those set out in the statute, i. e., (1) "neglect of duty" and (2) "for other good and just cause"; and that the county superintendent, on appeal, approved her removal. A demurrer was sustained to the complaint. The demurrer assigned the general ground that the complaint failed to "state facts sufficient to constitute a good cause of action." One of the specific reasons set out for demurrer was that the complaint showed on its face that petitioner had been removed only after a proper notice and hearings before the township trustee and the county superintendent, in accordance with the requirements of the Act.

---

[1] *Moore* v. *Mississippi*, 21 Wall. 636, 639.

[2] Cf. *Ogden* v. *Saunders*, 12 Wheat. 213, 270.

[3] *Armstrong* v. *Treasurer of Athens County*, 16 Pet. 281, 285.

[4] *Moore* v. *Mississippi, supra.*

[5] *Siler* v. *Louisville & N. R. Co.*, 213 U. S. 175, 193.

Under these circumstances, we can consider the decision of the Indiana courts as based on a finding of inadequacy in petitioner's complaint under Indiana law. This Court does not decide "questions of a constitutional nature unless absolutely necessary to a decision of the case." [6] We should not depart from this policy in order to strike down a law passed by a state in its sovereign capacity to establish legislative policies for the education of its people.

*Second.* This Court has declared that ". . . neither the [Fourteenth] amendment . . . nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote . . . education . . . of the people . . ." [7] Article 8, § 1 of the Constitution of Indiana provides: "Knowledge and learning, generally diffused throughout a community, being essential to the preservation of a free government; it shall be the duty of the General Assembly . . . to provide, by law, for a general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." In carrying out this constitutional mandate to provide education for the people of the State, the legislature of Indiana has found it necessary—as have other States—to alter legislative policy from time to time. The statutes and the decisions of Indiana indicate a laudable desire and a commendable effort not only to provide sufficient funds to

---

[6] *Burton* v. *United States,* 196 U. S. 283, 295. "If the experience of one hundred and fifty years of constitutional interpretation has taught any lesson, it is the unwisdom of making solemn declarations as to the meaning of that instrument which are unnecessary to decision. They can serve no useful purpose and their only effect may be to embarrass the Court when decision becomes necessary. *O'Donoghue* v. *United States,* 289 U. S. 516, 550; *Humphrey's Executor* v. *United States,* 295 U. S. 602, 626–627." Stone, J., dissenting, *Wright* v. *United States,* 302 U. S. 583, 604.

[7] *Barbier* v. *Connolly,* 113 U. S. 27, 31.

carry out these educational aspirations of the State, but also to provide reasonable security of employment for teachers. Such effort brought about the "Indiana Teachers Tenure Act of 1927." This law provided the conditions upon which "permanent" teachers with "indefinite contracts" could be removed from their positions, and was evidently intended to provide statutory security against their discharge by local school authorities for any causes except those specified in the law. These "permanent" teachers could cancel their "indefinite contracts" upon five days' notice at any time except during the school term or for a period of thirty days previous to it.

In 1933, the legislative representatives of the people of Indiana decided to change this policy by excluding township school corporations from its operation. The contention here is that the statutory tenure given teachers under the 1927 Act amounted to contracts with the state which could not be impaired by repeal or modification of the law.

The Indiana Supreme Court has consistently held, even before its decision in this case, that the right of teachers, under the 1927 Act, to serve until removed for cause, was *not given by contract, but by statute.* Such was the express holding in the two cases cited in the majority opinion: *Kostanzer* v. *State,* 205 Ind. 536; 187 N. E. 337; and *Elwood* v. *State,* 203 Ind. 626; 180 N. E. 471.

In *Kostanzer* v. *State, supra,* a teacher filed petition for *mandamus* alleging removal contrary to the "indefinite contract" obligation under the Act of 1927. Mandamus was opposed as an improper remedy because the teachers sought to compel action under a teachers tenure "*contract.*" Denying the contention that the teacher's rights were fixed by *contract,* the Supreme Court of Indiana said:

"But the duty which the judgment of the trial court compelled appellants to perform was a duty enjoined by

statute *and not by contract. . . . the duty was not im- posed by any provision of the contract.* In *School City of Elwood* v. *State ex rel. Griffin, supra,* this same con- tention was disposed of in the following language: *'It is because of appellees' right under this statute . . . that mandamus is the proper remedy in this case. . . . A public school teacher who, under a positive provision of the statute, has a fixed tenure of employment or can be removed only in a certain manner prescribed by the stat- ute, is entitled to reinstatement if he has been removed from his position in violation of his statutory rights.'*"

These cases demonstrate that the Supreme Court of Indiana has uniformly held that teachers did not hold their "indefinite" tenure under *contract,* but by grant of a repealable statute. In order to hold in this case that a contract was impaired, it is necessary to create a contract unauthorized by the Indiana legislature and de- clared to be non-existent by the Indiana Supreme Court.

In the similar case of *Phelps* v. *Board of Education,* 300 U. S. 319, coming to this Court from New Jersey, the Supreme Court of that State declared that:

*"The status of tenure teachers, while in one sense per- haps contractual, is in essence dependent on a statute, . . .* which the legislature at will may abolish, or whose emoluments it may change."

Under the New Jersey Act, which appears in the mar- gin,[8] teachers could serve during "good behavior and

---

[8] The New Jersey Act (as quoted in *Phelps* v. *Board of Education,* 300 U. S. 319, 320–321):

Section 1 (4 N. J. Comp. St. 1910, p. 4763). "The service of all teachers, principals, supervising principals of the public schools in any school district of this State shall be *during good behavior and efficiency, after the expiration of a period of employment of three consecutive years in that district,* unless a shorter period is fixed by the employing board; . . . *No* principal or *teacher shall be dis- missed* or subjected to reduction of salary in said school district *ex- cept for inefficiency, incapacity, conduct unbecoming a teacher or*

efficiency" and subject to removal only after a hearing and for cause. The Supreme Court of New Jersey declared that the *tenure* of New Jersey teachers was *"in one sense* perhaps contractual." The Supreme Court of Indiana declared that the *tenure of Indiana teachers was not contractual.* Yet this Court in the case of *Phelps* v. *Board of Education, supra,* decided that New Jersey's discharge of its teachers employed by the State "in a sense perhaps contractual" did not impair their contracts. The Court now strikes down Indiana's Teachers Tenure Law after repeated decisions by the state's Supreme Court that the teachers tenure is *not contractual.* The intent of the New Jersey Act and the intent of the Indiana Act were evidently identical and in view of this fact, I believe that the decision on the New Jersey appeal and the majority decision on the Indiana appeal are irreconcilable.

The Act of 1927 certainly does not clearly establish that the people of Indiana intended to surrender their sovereign right to change their educational policies from time to time to meet new needs or changed conditions. Under these circumstances "The presumption is that such a law (Teachers Tenure Law) is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." [9]

It is the end of every government to promote the general welfare of its people and we do not assume *"that the government intended to diminish its power of accomplishing the end for which it was created."* [10]

The Supreme Court of Indiana here held that "the Tenure Law does not purport to give a teacher a *definite*

---

other just cause, *and after a written charge* of the cause or causes shall have been preferred against him or her, . . . and after the charge shall have been examined into and found true in fact by said Board of Education, *upon reasonable notice to the person charged,* who may be represented by counsel at the hearing. . . ."

[9] *Dodge* v. *Board of Education,* 302 U. S. 74, 79.

[10] *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 547.

and permanent contract. The word *'indefinite'* is used in the statute itself. . . . The Tenure statute was only intended as a limitation upon the plenary power of local school officials to cancel contracts. . . . It was not intended as, *and cannot be,* a limitation upon the power of future Legislatures to change the law respecting teachers and their tenures. These are matters of public policy, of purely governmental concern, in which the legislative power cannot be exhausted or consumed, or contracted away, so as to limit the discretion of future General Assemblies." [11]

Prior to this decision and even before the 1927 Act, the Supreme Court of Indiana had said:

"With that [legislative] determination [relating to educational matters] the *judiciary can no more rightfully interfere, than can the Legislature with a decree or judgment pronounced by a judicial tribunal.* . . .

"As the power over schools is a legislative one, it is not exhausted by exercise. The Legislature having tried one plan is not precluded from trying another. It has a choice of methods, and may change its plans as often as it deems necessary or expedient; *and for mistakes or abuses it is answerable to the people, but not to the court.*" [12]

The clear purport of Indiana law is that its legislature cannot surrender any part of its plenary constitutional right to repeal, alter or amend existing legislation relating to the school system whenever the conditions demand change for the public good. Under Indiana law the legislature can neither barter nor give away its constitutional investiture of power. It can make no contract in conflict with this sovereign power. The construction of the constitution of Indiana by the Supreme Court of Indiana *must be accepted as correct.* That court holds that Indi-

---

[11] 5. N. E. (2d) 531, 532.

[12] *State ex rel. Clark* v. *Haworth,* 122 Ind. 462; 23 N. E. 946.

ana's Constitution invests Indiana's legislature with *continuing* power to change Indiana's educational policies. It has here held that the legislature did not attempt or intend to surrender its constitutional power by authorizing *definite* contracts which would prevent the future exercise of this continuing, constitutional power. If the constitution and statutes of Indiana, as construed by its Supreme Court, prohibit the legislature from making a contract which is inconsistent with a continuing power to legislate, there could have been no *definite* contracts to be impaired. "The contracts designed to be protected by the [Federal Constitution] . . . are contracts by which *perfect rights, certain definite, fixed private rights* of property, are vested. . . . It follows, then, upon principle, that, in every perfect or competent government, there must exist a general power to enact and to repeal laws; and to create, and change or discontinue, the agents designated for the execution of those laws." [13]

Merits of a policy establishing a permanent teacher tenure law are not for consideration here. We are dealing with the constitutional right of the people of a sovereign state to control their own public school system as they deem best for the public welfare. This Court should neither make it impossible for states to experiment in the matter of security of tenure for their teachers, nor deprive them of the right to change a policy if it is found that it has not operated successfully.

The Indiana Constitution gives the State legislature *complete authority* to control the public school system. The State Supreme Court declares that under this authority the legislature can change school plans as often as it believes a change will promote the interest of education *"and for mistakes or abuses it is answerable to the people,*

---

[13] *Butler* v. *Pennsylvania,* 10 How. 402, 416.

*but not to the court.*"[14]  I believe the people of Indiana, if they prefer, have the right under the Federal Constitution to entrust this important public policy to their elective representatives rather than to the courts.  Democracy permits the people to rule.  I cannot agree that the constitutional prohibition against impairment of contracts was intended to—or does—transfer in part the determination of the educational policy of Indiana from the legislature of that State to this Court.

Indiana, in harmony with our national tradition, seeks to work out a school system, offering education to all, as "essential to the preservation of free government."  That great function of an advancing society has heretofore been exercised by the states.  I find no constitutional authority for this Court to appropriate that power.  Indiana's highest court has said that the *State did not,* and has strongly indicated that the *legislature could not,* make contracts with a *few citizens,* that would take away from *all the citizens,* the continuing power to alter the educational policy for the best interests of Indiana school children. The majority decision now places in this Court a power which has been exercised by the states since the adoption of our Constitution.  The people have not surrendered that power to this Court by constitutional amendment.

For these reasons I cannot agree to the majority decision and I believe the judgment of the Supreme Court of Indiana should be affirmed.

---

[14] *State ex rel. Clark* v. *Haworth, supra.*