JUAN G. RIVERA, Plaintiff, *v.* REXFORD G. TUGWELL, GOVERNOR OF PUERTO RICO, ET AL., Defendants.

No. 24. Argued January 28, 1942.—Decided January 30, 1942.

Santos P. Amadeo, Virgilio Brunet, Rafael Baragaño, Jr., and José
    L. Novas for plaintiff.  George A. Malcolm, Attorney General,
    Pablo Defendini, Assistant Attorney General, and Angel E. Franco
    Cabrero, Deputy Attorney General, for defendants.

MR. JUSTICE SNYDER delivered the opinion of the court.

Petitioner filed a suit in the District Court of San Juan for a declaratory judgment that Act No. 32, Laws of Puerto Rico of 1941, p. 540, entitled "An Act to Prohibit and Prevent Nepotism and other Practices Inimical to a Sound Administrative Morality," is unconstitutional as applied to him as a school teacher. Petitioner has appealed to this Court from the order of the lower court denying his motion for an injunction *pendente lite* in the suit for a declaratory judgment. The present proceeding is an original petition filed in this Court asking for an injunction "to enforce the jurisdiction" of this Court.

The defendants contend that the order of the lower court denying an injunction *pendente lite* in the suit for a declaratory judgment is not appealable. Their position is that since we have no proper appeal before us, we have no jurisdiction to issue an injunction in an original suit filed in this court to make effective our appellate jurisdiction.

We find it difficult to follow this contention of the defendants. The books are full of cases in which appellate courts have passed on appeals from orders of lower courts granting or denying preliminary injunctions. Indeed, counsel for defendants concede that appeal would lie from an order denying a preliminary injunction, if the case in the lower court had been an injunction suit rather than a petition for a declaratory judgment. However, the defendants maintain that

appeals from such preliminary orders are restricted to classical injunction suits. That is a novel proposition for which the defendants cite no authorities and which in our opinon can not be sustained. We see no difference in practical effect, under the circumstances which exist in this case, between a petition for declaratory judgment coupled with a motion for injunction *pendente lite* and an injunction suit in which a similar injunction pendente lite is requested. We can not conclude that the right of appeal depends on such a fortuitous circumstance as the label of the main cause.

We wish to make it clear that we are not passing finally at this time on the appealability of the order of the lower court denying an injunction *pendente lite*. If the defendants so desire, they can renew that point if and when the appeal is heard on its merits. We hold at this time only that the appealability of the order of the lower court is not so clearly settled against the petitioner as to justify us in refusing to consider the present request for an injunction in aid of our appellate jurisdiction.

We therefore feel it necessary to consider the petition in this Court on its merits. If a petitioner has raised a serious and substantial question as to the validity of an Act of the Legislature of Puerto Rico as applied to him in a suit in a district court for a declaratory judgment, and if he would suffer irreparable damage if this Court did not preserve the *status quo* pending appeal, this Court has the discretionary power pursuant to Section 676 of the Code of Civil Procedure to issue an injunction for that purpose in an original suit brought in aid of its appellate jurisdiction. (Compare *Santaella* v. *Garrido*, 50 P.R.R. 141; *Roosevelt, Governor*, v. *District Court*, 42 P.R.R. 803.) It is therefore necessary for us to determine if the petitioner has made out a case under that rule.

Rivera, the petitioner, and his wife have permanent appointments as school teacher of Puerto Rico and have entered into written contracts with the Commissioner of Edu-

cation of Puerto Rico to that effect in accordance with Act No. 312, Laws of Puerto Rico of 1938, p. 553. These contracts, entered into prior to 1941, provide for annual salaries of $2,600 for himself and $850 for his wife. Rivera and his wife have been public school teachers for a number of years. At present he is principal of the Central High School of Santurce and his wife teaches at the same school. They "live together under the same roof."

Act No. 32, Laws of Puerto Rico of 1941, p. 540, popularly known as the Nepotism Act, provides that "no family can receive from public funds of the Insular Government . . . in the form of salaries . . . a sum greater than two hundred and fifty (250) dollars a month." The Act also provides that *"family* shall be understood to mean persons included within the third degree of consanguinity and the second degree of affinity, who live together under the same roof . . ."

The case of *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95, decided by the Supreme Court of the United States in 1938, involved the Teachers' Tenure Act of 1927 of Indiana. That Act provided for a probationary period for a public school teacher, after which he became a permanent teacher under a written contract. The Act also provided that after the expiration of the stated term of the said written contract, it is deemed to continue in effect and is known as an indefinite contract. Cancellation of the contract by the State could be for cause only as provided in the Act.

In 1933 the Legislature of Indiana attempted to amend the said Teachers' Tenure Act by repealing it in so far as township teachers were concerned. The Supreme Court of the United States held in the *Brand* case that the amendatory act was invalid in that it violated Article I, Section 10 of the Constitution of the United States providing that "no State shall . . . pass any . . . law impairing the obligation of contracts". The Court says at page 100:

"The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state

and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis to action by individuals, become contracts between them and the State or its subdivisions within the protection of Art. I, Sec. 10. If the people's representatives deem it in the public interest they may adopt a policy of contracting in respect of public business for a term longer than the life of the current session of the legislature."

Petitioner contended in his brief and at the oral argument that Act No. 29, Laws of Puerto Rico of 1931, p. 312, and Act No. 312, Laws of Puerto Rico of 1938, p. 553, providing for the qualifications, selection, contract and tenure of public school teachers of Puerto Rico are substantially similar to the said Teachers' Tenure Act of Indiana, particularly with reference to permanency of tenure. The defendants have made no contrary contention. We have examined the Puerto Rican Acts of 1931 and 1938 and compared them with the Indiana Act. We are inclined to believe that the provisions of the Acts of Puerto Rico with reference to permanency of tenure are sufficiently similar to the Indiana Act to raise a serious and substantial question as to the constitutionality of the Nepotism Act in so far as it applies to teachers who, like the petitioner and his wife, prior to the passage of the Nepotism Act, entered into permanent written contracts with the Commissioner of Education pursuant to the Acts of 1931 and 1938.

The petitioner filed an elaborate memorandum of authorities in which he undertook to demonstrate that the Nepotism Act can not be applied to him and his wife, because a husband and wife are not included in the definition of family found in the Act; that if the Act is construed as covering a husband and wife, any law prohibiting a husband and wife from both working for the government and living under the same roof is arbitrary, unreasonable and discriminatory; and that the title of the Act is defective.

These grounds have no reference to the peculiar status of public school teachers. It is therefore unnecessary to consider them at this time because of our conclusion that the doctrine enunciated by the Supreme Court of the United States in the *Brand* case raises a sufficiently serious and substantial question as to the constitutionality of the Nepotism Act as applied to the petitioner to justify us in issuing an injunction to make effective our appellate jurisdiction, provided the petitioner has made a showing of irreparable damage.

We therefore turn to the issue of irreparable damage. Here we are guided by the familiar rule of the balance of relative inconvenience and injury. Will the government suffer serious damage in this case if an injunction is granted and the law is thereafter upheld? It would seem not, as the government, while the appeal was pending, would simply pay the petitioner his salary for services which he would continue to render pursuant to his written contract. In addition, the government would perhaps have a claim against him for the excess of $450 a year which he and his wife earn over and above the $3,000 a year permitted by the Nepotism Act.

On the other hand, suppose we deny this petition for injunction and the Nepotism Act is ultimately held inapplicable to the petitioner? The petitioner alleges that on the fifteenth of this month he received a letter from the Chairman of the Civil Service Commission advising him that his "family" must waive that portion of their salary in excess of $250 a month which they are now receiving from the government. He also alleges that the Commissioner of Education proposes not to include him or his wife in the payroll for this month, in spite of the fact that they have continued to render services as teachers in accordance with their respective contracts. These allegations have not been controverted by the defendants. Counsel for defendants confined

themselves to urging at the oral argument that if the petitioner would waive the excess portion of his salary until the declaratory judgment is final, he could thereafter recover that amount from the government, if he prevails in the declaratory judgment suit. But one may without question waive his constitutional rights. That is a well-established rule even in criminal cases. If the petitioner waives the excess portion of his salary, he thereby conforms to the Nepotism Act, under the terms of the Act itself. Such action on his part would open the door to the contention that he has waived his rights to challenge the Nepotism Act.

The petitioner alleges, without contradiction by the defendants, that if he does not waive the excess portion of his salary, he will not be included in the payroll which the Commissioner of Education will compile on the last day of this month, which is tomorrow. To avoid running the risk of waiver of his constitutional rights, it would therefore seem that the petitioner would be compelled to submit to separation from service. In that event, if we deny the present petition for injunction and the petitioner finally wins his suit for declaratory judgment, his victory may be an empty one. Even if ultimately restored to his position, which may or may not be possible under the laws regulating selection and tenure of public school teachers, his temporary separation from service would jeopardize a host of privileges to which he would otherwise be entitled, such as retirement, promotion, classification and permanency. The balance of relative inconvenience and injury is clearly in favor of the petitioner. He has made a sufficient showing of irreparable damage, at least for the purposes of the petition now before us.

█ █ The petitioner contends that the petition for a declaratory judgment is a class suit brought by him both on behalf of himself and all public school teachers similarly

situated. The defendants do not discuss this question either in their pleadings or brief. However, counsel for defendants at the oral argument indicated his belief that it is an individual suit. That question would ordinarily not be important in a suit for declaratory judgment. After a final order has been entered in such a suit, it is assumed the defendant officials would be guided thereby in all cases involving persons similarly situated.

But we are confronted with the problem here because of the necessity of fixing the scope of our injunction and the amount of the bond. It is true that the caption of the petition is in the individual name of Rivera. But it is alleged throughout the petition that there are other public school teachers similarly situated, and the prayer asks for relief covering them. We therefore believe, at least for the purposes of the petition now before us, that it should be treated as a class suit. There would seem to be no objetion to filing a petition for declaratory judgment as a class suit, where common questions of law and fact exist for many persons in a similar situation. Borchard on Declaratory Judgments (2nd ed.), page 264; Anderson on Declaratory Judgments, page 122. See Section 266 of the Code of Civil Procedure; Section 11 of Act No. 47, Laws of Puerto Rico of 1931, p. 378 (Uniform Declaratory Judgment Law).

The petitioner prays that the bond he is required to post be fixed in a nominal amount, on the ground that even if the law be ultimately upheld in regard to public school teachers, the Government would have suffered no substantial damage in the interim as the school teachers affected would have continued to render the services required by law and would have been compensated in accordance with their present classifications. In view of the circumstances of this case, we shall grant an injunction conditioned on the posting of a bond in the amount of $1,000.

We again emphasize that we are not at this time passing on the validity of the Nepotism Act as applied to public school teachers. For example, the defendants contend that the *Brand* case does not invalidate the Nepotism Act because, as the Brand case itself points out in 303 U. S. at pages 108, 109, "every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power but . . . in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end . . ." Whether the impact of the Nepotism Act on the status of the petitioner as a public school teacher under his written contract is the result of the exercise of the police power for a public purpose by means reasonably adapted to that end is the ultimate question for us to decide after the district court has tried the suit for declaratory judgment on the merits and has made its findings on the facts and the law.

The injunction will be granted solely to maintain the *status quo* pending decision of the appeal from the order of the district court denying an injunction *pendente lite* in the suit for declaratory judgment.

Mr. Chief Justice Del Toro took no part in the decision of this case.