**SUPREME COURT UNIFORMED OFFI-CERS ASSOCIATION WITHIN the CITY OF NEW YORK et al., Plaintiffs,**

v.

**Thomas F. McCOY et al., Defendants.**

No. 64 Civ. 3329.

United States District Court
S. D. New York.

Sept. 12, 1966.

Kunstler, Kunstler & Kinoy, New York City, for plaintiffs, William M. Kunstler, New York City, of counsel.

Lawrence N. Marcus, New York City, for defendants.

Before FRIENDLY, Circuit Judge, and WYATT and FRANKEL, District Judges.

WYATT, District Judge.

Before us are motions for summary judgment, one made by plaintiffs and one made by defendants. Fed.R.Civ.P. 56. The motion by defendants must be granted.

This action was commenced by plaintiff Supreme Court Uniformed Officers Association Within the City of New York (the "Association") and the three individual plaintiffs, who are said to be suing "individually and on behalf of others similarly situated". The Association is alleged to be an unincorporated organization of uniformed officers assigned to the Supreme Court of the State of New York in the five counties of the City of New York ("Supreme

Court"). The individual plaintiffs allege that they are, and have been since before September 1, 1962, uniformed court officers in the Supreme Court.

Defendants are the members of the judicial conference of the State of New York, among whom are included the administrative board and the state administrator. Judiciary Law, McKinney's Consol.Laws, c. 30, §§ 210, 211, 224.

Defendants moved to dismiss the action, principally on the ground that the complaint did not show a substantial federal question. 28 U.S.C. § 1331; Fed.R. Civ.P. 12(b) (1). Judge Metzner denied this motion by order with memorandum filed February 12, 1965.

Plaintiffs moved for an order convening a three judge court. 28 U.S.C. § 2281. Judge Cashin granted this motion by order with memorandum filed May 12, 1965. Chief Judge Lumbard designated the members of this three judge Court by order filed May 17, 1965. With his consent, Judge Cashin was relieved as a member of the Court and Judge Frankel was designated in his place, by order of Chief Judge Lumbard filed May 13, 1966.

The complaint is directed to certain changes said to have been made in the conditions of employment of plaintiffs by the adoption by the people of New York, effective September 1, 1962, of a new Article VI of the Constitution of New York; by the enactment by the legislature of New York, effective September 1, 1962, of a new Article 7–A of the Judiciary Law; and by the adoption by the administrative board, effective October 1, 1964, of Articles V, VI and VII of the Rules of that board. Plaintiffs ask, among other things, for an injunction against enforcement of those Rules by defendants.

The contention for plaintiffs is that they had contracts of employment with the State of New York and that the Rules of the administrative board (a) impair the obligations of those contracts in violation of Article I, Section 10, of the United States Constitution; (b) deprive them of property without due process of law in violation of the Fifth and Fourteenth Amendments; and (c) deny them the equal protection of the laws in violation of the Fourteenth Amendment. The two last mentioned claims have not been pressed and, in any event, are without merit.

The several changes of which plaintiffs complain come about as part of the establishment in New York on September 1, 1962, of a unified court system, for the supervision of which the administrative board was made responsible (Judiciary Law, § 212).

Because we conclude that there were no employment contracts between plaintiffs and the State, it is not necessary for us to consider the nature and extent of the changes claimed to have been made in the employment conditions of plaintiffs, nor whether the Association is in any event a proper party plaintiff, nor whether the three individual plaintiffs can properly sue "on behalf of others similarly situated".

The record establishes that there is no genuine issue as to the material facts concerning the existence or not of the alleged contracts of employment, that on such facts plaintiffs had no contracts of employment, that their constitutional claims thus fail, and that summary judgment for defendants is proper and required.

The individual plaintiffs began their employment with the State before September 1, 1962, which was the effective date of the unified court system prescribed by the constitutional and legislative provisions already mentioned.

The Constitution of New York at all relevant times has contained a provision (Article V, § 6) that "appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which * * * shall be competitive * * *."

■ This is the only New York constitutional provision pressed upon us for plaintiffs as support for their claim of contract, but it is strongly pressed for them in that connection. Clear it is, however, that the provision has nothing to do with employment contracts for State employees, nor whether there should be any such contracts; certainly there is no direction that employment contracts be made with any State employees. The provision requires only that merit and fitness, determined as far as practicable by competitive examination, govern appointments and promotions in the civil service of the State.

When the people of New York wish a contract relationship to exist with any class of State employees, the Constitution specifically so states. In 1938, the people approved a constitutional provision (Article V, § 7) that " * * * membership in any pension or retirement system of the state * * * shall be a contractual relationship, the benefits of which shall not be diminished or impaired". See Birnbaum v. New York State Teachers Retirement System, 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958).

There is no similar provision that employment by the State "shall be a contractual relationship" etc.

When the individual plaintiffs began their employment by the State before September 1, 1962, employment of persons by the State was governed by a civil service law, enacted by the Legislature.

The position of court officer and court attendant was in the "competitive class" of the "classified service". Civil Service Law, McKinney's Consol.Laws, c. 7, §§ 40, 44.

This meant that appointments were made by selection from the three persons certified by the Civil Service Commission "as standing highest" on the "eligible list" and "who are willing to accept such appointment". Civil Service Law, § 61. The "eligible list" was made up after competitive examinations. Civil Service Law, §§ 50, 56.

The individual plaintiffs were appointed from eligible lists after taking competitive examinations. Notices of the examination were issued which contained, among other information, qualifications for the position.

No written contract of employment is claimed by plaintiffs but rather that an oral contract came into being when they were "sworn in" after being interviewed by court personnel (usually a clerk) and informed of the "duties and emoluments of their offices" and after they "accepted such offer of employment". Memorandum for Plaintiffs, page 9.

We accept the statements of plaintiffs of the facts as to their employment but from these, in the light of applicable New York legislation, we find that there were no employment contracts giving plaintiffs any rights either as to length of employment or as to the terms and conditions of their employment. Nor was any one authorized by the legislature to make any employment contract with plaintiffs.

■ The result was that plaintiffs became employees of the State, subject in all respects to applicable legislation, either the civil service law or otherwise, and subject to any changes thereafter made in their employment by the legislature.

The difference between the case at bar and such cases as Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1958), is one of fact. In *Anderson*, there was a written contract made with a teacher under an Indiana statute requiring specifically that such contracts be made with teachers. The Supreme Court held that "petitioner had a valid contract with the respondent, the obligation of which would be impaired by the termination of her employment" (303 U.S. at 104, 58 S.Ct. at 448).

In the case at bar there were no contracts with plaintiffs. The legislature and the administrative board were thus constitutionally free—so far as plaintiffs are concerned—to proceed as they

have in carrying out the direction in the New York Constitution (Article VI, § 1, effective September 1, 1962) that there shall be a "unified court system for the state". It is noted that the Constitution in this connection provided (Article VI, § 35) that "nonjudicial personnel", such as plaintiffs, should "to the extent practicable, * * * be continued * * * with the same status and rights". The legislature has so declared (Judiciary Law, § 223) and has further provided that the "standards and policies of the administrative board" as to personnel "shall be consistent with the civil service law" (Judiciary Law, § 212(1)).

Although we entertain serious doubt whether the constitutional question raised by plaintiffs was sufficiently substantial to have warranted the convocation of the three judge court, we think the interests of justice would be best served by our deciding the case on the merits. Accordingly, the motion of defendants for summary judgment is granted and the Clerk is directed to enter judgment in favor of defendants dismissing the action on the merits.

So ordered.