Morris APLIN, Plaintiff–Appellant,

v.

PORTER SCHOOL TOWNSHIP OF POR-TER COUNTY; Advisory Board of Por-ter School Township; and Roger Baird, School Township Trustee of Porter School Township, Defendants–Appel-lees.

No. 3–979A266.

Court of Appeals of Indiana, Third District.

Dec. 29, 1980.

David C. Campbell, Wayne O. Adams, Bingham, Summers, Welsh & Spilman, Indianapolis, Patrick E. Donoghue, Sweeney, Winski, Dabagia & Donoghue, Michigan City, for plaintiff–appellant.

James L. Jorgensen, Hoeppner, Wagner & Evans, Valparaiso, for defendants–appellees.

GARRARD, Presiding Judge.

This case comes to us on appeal from the entry of summary judgment in favor of appellees, Porter School Township of Porter County, the Advisory Board of Porter School Township (Advisory Board) and Roger Baird, School Township Trustee of Porter School Township, in an action filed by appellant, Morris Aplin, alleging that defendants wrongfully terminated his contract of employment as a public school teacher.

Aplin was employed by Porter School Township as a nonpermanent, or non–tenure, teacher.[1] On April 28, 1977, Trustee Baird signed and delivered, or caused to be delivered, to Aplin an "Official Form of Notice of Termination of Contract of Non–Tenure Teachers."[2] Thereafter, Aplin brought this action contending, as he does on appeal, that his termination was unlawful. Aplin bases his contention upon IC 20–6.1–4–14, the statute pertaining to contract rights of nonpermanent teachers, which he interprets as requiring that only the "governing body" of a school corporation may make the decision not to renew a teacher's contract. Pursuant to IC 20–6.1–1–3 the "governing body" of a school corporation consists of the township trustee and the advisory board. Since the decision to not continue his contract was made by Trustee Baird alone, Aplin argues he was unlawfully discharged. The trial court held for defendants, concluding that, as a matter of law, the trustee alone could make the decision to not renew. We affirm.

The granting of summary judgment should be sustained only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

1. A distinction is drawn in the law between nonpermanent and permanent teachers. The latter have served at least five successive years in a particular school corporation. IC 20–6.1–4–9.

2. Pursuant to IC 20–6.1–4–14, set out *infra*, the contract of a non–tenure or nonpermanent teacher continues in force for the next school year unless the teacher is notified by the school corporation prior to May 1st of the existing school year.

any affidavits and testimony, reveal that no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(c). In the instant case the facts are not in dispute. The case turns upon a purely legal issue: Who is authorized to make the determination to not renew the contract of a nonpermanent teacher?

The resolution of this case rests upon the proper construction to be given certain provisions of our statutes regarding teachers and school corporations. Specifically, we must determine upon whom the legislature has conferred the authority to terminate nonpermanent teachers. This is a matter of first impression, and there is little case law available to aid in its resolution.

At the time of Aplin's termination, IC 20–6.1–4–14 (1976), read as follows: [3]

"20–6.1–4–14. Contract rights of nonpermanent teachers.–(a) Each contract

---

**3.** In 1978, IC 20–6.1–4–14 was amended by a change in the language of paragraph (b) and the addition of paragraphs (c) and (d). The present version reads as follows:

"20.6.1–4–14. Contract rights of nonpermanent teachers.–(a) Each contract entered into by a nonpermanent teacher and a school corporation continues in force on the same terms and for the same wages, unless increased by IC 20–6.1–5–1, the teachers' minimum salary law, for the next school term following the date of termination set in the contract. However, the contract does not continue if:

(1) On or before May 1, the school corporation notifies the teacher that the contract will not continue for the next school term; this notification must be:

(A) Written; and

(B) Delivered in person, or mailed by registered or certified mail to the teacher at his last and recognized address;

(2) The teacher delivers or mails by registered or certified mail to the school corporation his written resignation; or

(3) The contract is replaced by another contract between the parties.

(b) A teacher who is refused continuation of the contract under subsection (a) of this section has the following rights:

(1) Upon the request of the teacher, and within fifteen [15] days of the receipt of the notice of contract non–renewal the governing body or the superintendent of the school corporation shall provide the teacher with a written statement which may be developed in an executive session and which is not a public document, giving the reasons for the non–continuation of the teacher's contract.

(2) The principal of the school at which the teacher teaches, shall provide the teacher with an annual written evaluation of the teacher's performance before January 1, of each year. Upon the request of a nonpermanent teacher, delivered in writing, to the principal within thirty [30] days after the teacher receives the evaluation required by this section, the principal shall provide the teacher with an additional written evaluation.

"(c) A conference shall be held with the governing body, or at its direction with the superintendent or his designee, not more than ten [10] days following the day the governing body receives the request. If the first conference is not with the governing body, a second conference shall be held with the governing body not more than twenty [20] days following the day the governing body receives the request for a second conference, or before the end of the school year, whichever is earlier. The governing body may, in addition to a conference, require that the superintendent or his designee and the teacher summarize in writing the position of each with respect to the continuation of the contract. At any conference, the governing body, the superintendent or his designee may provide any information supporting noncontinuance, and the teacher may provide any information demonstrating that noncontinuance of the contract is improper. The conference with the governing body shall be in executive session unless the teacher requests a public conference. The teacher may have a representative at any conference. The time periods set out in this subsection shall be extended for a reasonable period when a teacher or school official is ill or absent from the school corporation or for other reasonable cause. The governing body shall affirm or reverse its position on continuation of the teacher's contract not more than ten [10] days after the conference.

(d) The governing body of a school corporation may decide not to continue a teacher's contract under this section: (1) for any reason considered relevant to the school corporation's interest; or (2) because of a teacher's inability to perform his teaching duties."

The present version of the statute clearly vests the *ultimate* decision as to the non–renewal of a nonpermanent teacher's contract in the school corporation's governing body should a teacher wish to pursue the available conference procedures. While we must decide this case under the language of the 1976 statute, we note that the legislature's further clarification of the appeals process does not resolve the question as to who may make the *initial* decision with respect to continuation of a contract.

entered into by a nonpermanent teacher and a school corporation continues in force on the same terms and for the same wages, unless increased by IC 20–6.1–5–1, the teachers' minimum salary law, for the next school term following the date of termination set in the contract. However, the contract does not continue if:

(1) On or before May 1, the school corporation notifies the teacher that the contract will not continue for the next school term; this notification must be:

(A) Written; and

(B) Delivered in person, or mailed by registered or certified mail to the teacher at his last and recognized address;

(2) The teacher delivers or mails by registered or certified mail to the school corporation his written resignation; or

(3) The contract is replaced by another contract between the parties.

(b) A teacher who is refused continuation of the contract under subsection (a) of this section may request a written statement showing reason for the dismissal from the governing body."

In an effort to aid our determination, both parties offer interpretations of this statute. Specifically, the parties have focused upon who constitutes the "school corporation" thereunder.[4] Aplin contends that "school corporation" under paragraph (a) above refers to the governing body of the school corporation, namely the advisory board and the trustee. Appellees urge that the legislature's use of the words "school corporation," rather than governing body, indicate that they did not intend for the latter to be the decision maker.

■■■ However, we need not inquire into what the legislature intended by its use of the words "school corporation" as we find nothing in paragraph (a) which addresses the question of *who* is empowered to make the *non–continuation* decision. Rather it

provides a procedural mechanism for the notification of such a decision. We construe the term "school corporation" as merely indicating that school officials must notify the teacher that his contract will not be renewed, and the manner in which the notification must be made. Therefore, paragraph (a) speaks only to the notice requirements of the non–renewal of nonpermanent teachers. We note with regard to the adequacy of the notice afforded Aplin, that the trustee alone, in signing the notice of non–renewal, may represent the school corporation. In *State ex rel. Sights v. Edwards* (1949), 228 Ind. 13, 89 N.E.2d 443, the Supreme Court held, on petition for rehearing, that a notice of dismissal of a teacher was not insufficient where it was signed only by the trustee. In so holding, the Court stated, "[u]nder this statute, the trustee is to all intents and purposes, the school corporation, for whom he acts. It can act only through him in the matters here involved." 228 Ind. at 30, 89 N.E.2d 443.

■■ We next turn to paragraph (b) of IC 20–6.1–4–14 wherein the legislature provided that a teacher could obtain a statement of the reasons for his dismissal from the governing body of the school corporation. Aplin argues that this reference to the governing body indicates that it is they, and not the trustee acting alone, who make the termination decision. However, it does not follow *a fortiori* that because the governing body may be called upon to provide a list of reasons for a nonpermanent teacher's termination, they are also the body which must make the *original* decision. We decline to accept such a construction of the statute. While the end result of the process available to a teacher under paragraph (b) is to involve the governing body in reviewing a decision to terminate, the statute does not support the inference that a discharge is unlawful because someone other than the governing body made the initial decision not to renew a teacher's contract.

4. IC 20–6.1–1–5 provides:

"School corporation defined.–As used in this article [20–6.1–1–1—20–6.1–6–17], the term 'school corporation' means any public school corporation established by and under the laws of the state. The term includes, but is not

necessarily limited to, any school city, school town, school township, consolidated school corporation, metropolitan school district, township school corporation, county school corporation, united school corporation or any community school corporation."

Since IC 20–6.1–4–14 provides little assistance in resolving this issue, we must consider the broader policies behind the trustee's role in the school system, and the relationship of that role to the process of terminating nonpermanent teachers. In describing the duties of school trustees, IC 20–2–9–1 provides in relevant part:

> "The school trustees shall take charge of the educational affairs of their respective townships, towns and cities. *They shall employ teachers*, establish and locate conveniently a sufficient number of schools for the education of children therein, and build, or otherwise provide, suitable houses, furniture, apparatus and other articles and educational appliances necessary for the thorough organization and efficient management of said schools." (emphasis added)

It thus seems clear that school trustees are generally empowered to take such action as is necessary to maintain the efficient operation of the schools in their township. Included in their duties is the power to employ teachers. Absent legislative directive on this matter, we must decide if the power to hire necessarily includes the power to decide not to rehire.

We emphasize that the instant case involves a nonpermanent teacher. Nonpermanent teachers are not accorded the same status, for purposes of right to employment and contract renewal, as are permanent teachers. The courts have recognized that the rights bestowed upon permanent teachers are contractual in nature, and may only be taken away within the limits provided by statute. *State of Indiana ex rel. Brand v. Anderson* (1938), 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685; *State ex rel. Tittle v. Covington Community Consolidated Schools of Fountain and Warren Counties, et al.* (1951), 229 Ind. 208, 96 N.E.2d 334. Specifically, IC 20–6.1–4–10 lists the sole grounds for the cancellation of a permanent teacher's contract, and IC 20–6.1–4–11 details the extensive notification and hearing procedures to which a permanent teacher is entitled upon cancellation of his contract.

On the other hand, nonpermanent teachers have no contractual right to continued employment. The legislature has left the decision not to rehire a nonpermanent teacher to the relatively unfettered discretion of school officials. Absent a right to have one's contract continued, the nonpermanent teacher's contract rights exist only with regard to the contract entered into for the present school year. The decision to continue a nonpermanent teacher's contract is merely the decision to re–employ that teacher for another year. Conversely, where no right to employment exists for succeeding years, the decision to not continue a nonpermanent teacher's contract is merely a determination to not re–employ the teacher. Since a trustee is vested with the power to "employ teachers" under IC 20–2–9–1, the power to decide not to "re–employ" a teacher is clearly consistent with a trustee's statutory duties and is implicitly necessary to effect the trustee's duty to "employ" the teacher for the ensuing school year.

We conclude, therefore, that the trustee of a school township may make the initial decision to not renew the contract of a nonpermanent teacher. Accordingly, Aplin's dismissal was not rendered unlawful by Trustee Baird having alone determined to not continue his contract.

Affirmed.

HOFFMAN and STATON, JJ., concur.